GARY E. MILLER, IN PERSON AND FOR ALL PERSONS
SIMILARLY SITUATED, APPELLANT, V. CITY OF OMAHA,
A MUNICIPAL CORPORATION, ET AL., APPELLEES.

618 N.W.2d 628

Filed October 6, 2000. No. S-99-1238.

M.H. Weinberg, of Weinberg & Weinberg, P.C., for appellant.

Jo A. Cavel, Assistant Omaha City Attorney, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Gary E. Miller sued the City of Omaha (City), the City of Omaha Employees' Retirement System (COERS), and the State of Nebraska to obtain disability pension benefits for himself and a purported class of participants without a reduction for workers' compensation or Social Security. The trial court initially granted summary judgment in favor of the defendants. On appeal, we reversed the judgment and remanded the cause for further proceedings, concluding that a material question of fact

prevented summary judgment. See *Miller v. City of Omaha*, 253 Neb. 798, 573 N.W.2d 121 (1998). On remand, the trial court found for the defendants, and Miller now appeals.

## SCOPE OF REVIEW

■ Determinations of factual issues in a declaratory judgment action will not be disturbed on appeal unless they are clearly wrong. *Heinold v. Siecke*, 257 Neb. 413, 598 N.W.2d 58 (1999).

■ Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from a trial court. *Hawkes v. Lewis*, 255 Neb. 447, 586 N.W.2d 430 (1998).

## FACTS

On September 14, 1961, COERS implemented a pension program for the City's employees. COERS required mandatory employee contributions which approximately equaled the contributions made by the City. The City and the employees also provided equal Social Security contributions. Miller was hired by the City on July 16, 1964, and was covered by COERS, Social Security, and Nebraska workers' compensation.

At the time of Miller's initial employment, ordinance No. 22929, § 7.24.125 (the 1964 ordinance), was in effect. Section 7.24.125, entitled "Accidental disability pension—Injuries in line of duty," provided in part:

> Any member of the System who, while in the line of duty, has sustained or shall sustain injuries or sickness, arising out of the immediate or direct performance or discharge of his duty, which immediately or after a lapse of time permanently unfit him for active duty, shall receive a monthly accidental disability pension as long as he remains unfit for active duty equal to fifty percent of his average final monthly compensation, but, in no event, shall said disability pension exceed the sum of two hundred fifty dollars per month. In addition thereto, he shall be paid all medical, surgical and hospital expenses which may be incurred as a result of such sickness or injury but the pension and other

benefits, being in excess of benefits under the Workmen's Compensation Act, shall be in lieu thereof.

For the period of March 1964 to June 1972, pursuant to the 1964 ordinance, the City paid an employee who was injured on the job periodic workers' compensation benefits and medical expenses until his service-connected disability pension was granted by COERS. Thereafter, to the extent that the pension benefits were in excess of the amount of periodic workers' compensation benefits required by the Nebraska Workers' Compensation Act, the City discontinued such periodic workers' compensation payments. COERS also paid the medical expenses after the awarding of a service-connected disability pension. COERS did not deduct from the pension award the amount of Social Security benefits received by the employee.

On June 20, 1972, ordinance No. 26389, § 7.24.127 (the 1972 ordinance), was passed. The 1972 ordinance changed the disability pension plan by providing for a reduction of pension benefits by the amount of Social Security the employee received. However, the pension plan also increased the amount of the pension benefits to 60 percent of the employee's monthly compensation, and there was no longer any cap on that amount.

On January 25, 1977, ordinance No. 27936 (the 1977 ordinance) was passed. This ordinance merely amended the 1972 ordinance by providing that disability pension benefits would begin 5 months after the disability began, instead of 6 months, and that the City should pay any medical, surgical, and hospital expenses from its general fund. All other provisions of the 1972 ordinance, as well as the practices of the City in implementing the ordinance, remained the same.

On December 19, 1980, we decided *Novotny v. City of Omaha*, 207 Neb. 535, 299 N.W.2d 757 (1980). Novotny had become disabled and was awarded workers' compensation benefits. In *Novotny*, we addressed the issue of whether the City was relieved of its statutory obligation to pay workers' compensation benefits when the pension plan provided that payment of disability pension benefits would be in lieu of workers' compensation benefits. We concluded that the payments under the pension plan did not affect the right of Novotny to benefits under the Nebraska Workers' Compensation Act.

For the period after our decision in *Novotny* through April 17, 1989, an employee who was injured on the job received a service-connected disability pension from COERS with no deduction or offset for workers' compensation paid to the employee by the City. However, the City continued to reduce the pension plan by the amount of Social Security benefits received.

On April 18, 1989, the 1977 ordinance was amended by ordinance No. 31771 (the 1989 ordinance). The 1989 ordinance deleted the "in lieu thereof" language and added the following:

> Such monthly disability pension in combination with workers' compensation and social security shall not exceed sixty (60) per cent of such member's base compensation for the last full month prior to disability. Such disability benefits shall commence immediately after the eligible member's disability shall have been approved by the board, with disability date having been set by the board upon approval of claim.

Therefore, after April 18, 1989, COERS deducted from the pension award the workers' compensation benefits received by the employee from the City and the Social Security benefits received by the employee from the federal government. It was under the 1989 ordinance that Miller was granted his disability pension.

Miller suffered a back injury on the job on March 27, 1987, which resulted in permanent and total disability. He applied for a service-connected disability pension from COERS on May 4, 1989, and was granted the pension effective June 22.

On or about March 19, 1990, the City and COERS reduced Miller's pension benefits by the amount of workers' compensation payments made to him. The Social Security benefits which Miller received offset the remainder of his pension benefits from COERS, and Miller now receives no disability pension benefits from COERS.

Miller filed suit, seeking, inter alia, a declaratory judgment to determine to what extent COERS could reduce his disability benefits by either workers' compensation or Social Security benefits. The trial court initially sustained the City's motion for summary judgment and dismissed Miller's operative petition. On appeal, we reversed the judgment and remanded the cause

for further proceedings, finding that there was a material issue of fact regarding whether Miller had relied upon the City's practice between 1980 and 1989 of neither applying the "in lieu thereof" language nor reducing pension benefits by the amount of workers' compensation, such that Miller's protected contractual rights were impaired. See *Miller v. City of Omaha*, 253 Neb. 798, 573 N.W.2d 121 (1998).

After remand, the trial court found that Miller had no expectation of receiving a pension without reduction for workers' compensation benefits, that his rights were not impaired by the 1989 ordinance, and that he did not rely on the practices of the City and COERS in paying both pension and workers' compensation benefits for the years 1981 to 1989. The trial court concluded that the administrative practice of paying both pension and workers' compensation benefits to employees who retired before Miller did not create a contractual right, nor had Miller convinced the court that he had an expectation of receiving pension benefits without an offset for workers' compensation benefits received. Miller timely appeals from this order.

## ASSIGNMENTS OF ERROR

Miller asserts that the trial court erred by failing to (1) follow the mandate and decision of this court in *Miller v. City of Omaha, supra*; (2) follow the law on promissory estoppel; (3) follow the law on equitable estoppel; and (4) disqualify the Omaha City Attorney due to a conflict of interest.

## ANALYSIS

Miller first argues that the trial court erred in failing to follow the mandate of this court in *Miller v. City of Omaha, supra*. In *Miller*, we stated: "While an administrative practice can create a contractual right, a necessary element to the creation of such a right is that the employee has relied upon the practice or representation in deciding to commence or continue his or her employment." 253 Neb. at 810, 573 N.W.2d at 130. Where an employee's expectations concerning pension benefits are legitimately relied on in commencing or continuing employment, the pension benefits become part of the wage and fringe benefit package. See *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. 892, 320 N.W.2d 910 (1982).

Miller claims that while the court did find that he had not relied on the City's practice of not deducting workers' compensation benefits, it failed to make any findings as to whether Miller had relied upon a representation by the City which Miller alleged occurred at a City meeting in the late 1970's or early 1980's.

In its order, the trial court referred to a meeting that allegedly took place some time around 1981. Miller had alleged that some unknown person at this meeting suggested to employees of the City that service-connected disability pension benefits would not be reduced or offset by workers' compensation benefits. The court referred to this evidence when it found that Miller had no expectation and did not rely on the City's practice or representation in deciding to continue his employment. Therefore, we initially conclude that the trial court did consider the alleged representations and thus complied with the mandate.

With regard to Miller's claim that he relied on a promise or representation made by the City, Miller alleges that he attended a meeting at a City building located at 26th and Lake Streets in the late 1970's or early 1980's and that someone from the City told the employees attending that there would be no offset for disability or because of workers' compensation. Miller was unable to identify who the person was, and he had no additional information about the meeting. He testified that he knew nothing about the pension plans or how they worked. The only direct information he recalled was that he had received a book from the City about pensions in 1964, when he began his employment.

Whether this representation was made and whether Miller did in fact rely upon such representation is a question of fact. Determinations of factual issues in a declaratory judgment action will not be disturbed on appeal unless they are clearly wrong. *Heinold v. Siecke*, 257 Neb. 413, 598 N.W.2d 58 (1999).

It is clear that prior to our decision in *Novotny v. City of Omaha*, 207 Neb. 535, 299 N.W.2d 757 (1980), Miller could not have relied upon a statement that there would be no offset for workers' compensation because prior to *Novotny*, a person who suffered disability as a result of an on-the-job injury would receive either workers' compensation or pension benefits, but not both. It was not until after *Novotny* that the City commenced paying both workers' compensation and pension benefits.

Paul Murphy, the City's benefits manager since the mid-1970's, testified that only recently had the City held frequent meetings with regard to benefits. Murphy stated that he was the only person who would have addressed such issues. He further testified that pension and retirement benefits were typically not covered at such meetings.

On cross-examination, Miller testified:

> I just knew that we had pension benefits for when we retired. If we got hurt on the job, we'd be taken care of. If we couldn't work anymore, we'd be taken care of. I assumed that meant there was some kind of disability in there. What, I don't know.

The trial court summarized its findings with regard to Miller's reliance on the alleged representations made by the City as follows:

> The only evidence before the Court is Plaintiff's vague remembrances of conversations held at union meetings. That such matters would have been brought at regular union meetings is contradicted by the testimony of Defendants' witnesses. Unlike Halpin v. Nebraska State Patrolmen's Retirement Systems, 211 Neb. 892, 320 N.W.2d 910 (1982), we have no testimony from other employees stating they relied upon representations made that they would receive the same as Novotny and the eight others who retired between 1981 and 1989. The Court, therefore, finds that the administrative practice of paying both pension and workers['] compensation benefits to eight employees who retired before Plaintiff did not create a contractual right, nor has Plaintiff convinced the Court that he had an expectation to receive pension benefits without an offset for workers['] compensation benefits received.

We conclude that the trial court was not clearly wrong in determining that Miller did not rely upon any alleged statements made with regard to his pension plan in continuing his employment with the City until his retirement due to injury.

Similarly, there is no evidence that Miller relied upon the City's practice of paying both workers' compensation and pension benefits from 1981 to 1989. Miller was not familiar with

the *Novotny* case or whether it had any impact on the workers' compensation or pension benefits. Miller knew nothing about the pension benefits that were paid and did not know that some persons were receiving benefits pursuant to *Novotny*. Therefore, the trial court was not clearly wrong in determining that the City's practice of paying both pension and workers' compensation benefits did not create a contractual right upon which Miller had relied.

In Miller's second and third assignments of error, he alleges the trial court erred in failing to enforce an alleged promise or representation made by the City under the doctrines of promissory estoppel and equitable estoppel. Miller claims that he had an oral contract for receipt of both workers' compensation benefits and a service-connected disability pension which would not be diminished by workers' compensation or Social Security benefits. He bases his claim on a representation allegedly made by a City employee at a meeting in the late 1970's or early 1980's. Miller also claims he relied upon the City's administrative practice between 1981 and 1989 of not deducting workers' compensation benefits received.

The City asserts that no such contract or promise was made and that because Miller was unaware of the City's administrative practice of paying disability and workers' compensation benefits for the period of 1981 to 1989, he could not have relied on such practice.

Miller claims that the issue of estoppel was raised in his sixth cause of action, in which he alleged: "The actions of the Defendant CITY OF OMAHA and COERS violates the City's promise to the Plaintiffs to provide a vested disability pension and the City should be estopped from violating such promise." Six elements must be satisfied for the doctrine of equitable estoppel to apply. See *Woodard v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831 (1999). One of the elements of promissory estoppel is that the party asserting estoppel must rely in good faith upon the conduct or statements of the party to be estopped. *Id.* The trial court was not clearly wrong in determining that Miller did not rely upon alleged statements made by the City regarding workers' compensation benefits to be paid in conjunction with pension benefits. Therefore, one of the essential ele-

ments of estoppel has not been satisfied, and estoppel does not apply in this case.

Miller's fourth assignment of error is that the trial court erred by failing to disqualify the Omaha City Attorney, who represented both the City and COERS. Miller claims that a conflict existed between the City and COERS as to which entity would potentially be liable to Miller should he prevail in the action.

Miller referred to this alleged conflict of interest only briefly during opening statements. The issue was raised as follows:

> THE COURT: Apparently if they're willing to let you go ahead representing both of 'em, then they're in agreement whatever happens, whether one is going to pay or the other is going to pay.
>
> MS. CAVEL: That's correct.
>
> THE COURT: They're rolling the dice with the same attorney, you know.
>
> MS. CAVEL: That's correct, Your Honor.
>
> MR. WEINBERG: You know my position. I'm preserving it for the record. I have to, because my man is a member of the pension board, also — I mean a member of the pension plan, rather, and he has rights to preserve those assets. And that's part of the declaratory judgment.
>
> THE COURT: Your objection is noted.

Additionally, Miller objected to the offer of consent forms by the City and COERS which provided for continued representation by the Omaha City Attorney. Miller's objection to the consent forms vaguely infers that whether the City or COERS would have to pay Miller if he prevailed created a conflict of interest which the City and COERS could not waive.

Miller argues that a governmental attorney cannot avoid a conflict between clients by obtaining their consent to further representation. Miller claims that special conflict of interest rules for governmental attorneys promulgated by this court place a higher standard on governmental attorneys. In support of this proposition, Miller cites to *State ex rel. NSBA v. Douglas*, 227 Neb. 1, 416 N.W.2d 515 (1987), and *State ex rel. Nebraska State Bar Assn. v. Richards*, 165 Neb. 80, 84 N.W.2d 136 (1957).

*Douglas* was an attorney disciplinary proceeding against Paul Douglas, former Attorney General of Nebraska. In *Douglas*, we

stated: "DR 5-105(C), which refers to consent, is not applicable to a public officer." 227 Neb. at 58, 416 N.W.2d at 548, citing *State ex rel. Nebraska State Bar Assn. v. Richards, supra.* Miller presumably argues that this statement justifies his position that a governmental attorney cannot avoid a conflict between clients by obtaining their consent to further representation.

*Richards* was also an attorney discipline case. The issue in *Richards* concerned the fact that the respondent had acted as attorney for the administratrix of two estates and also for Deuel County in the matter of determining and assessing inheritance taxes. We noted that

> canon No. 6, Canons of Professional Ethics, American Bar Association, provides that: "It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose."

*Richards*, 165 Neb. at 91-92, 84 N.W.2d at 144. However, we stated: "The consent clause in the canon has no application in the case of a public officer. Opinions 16, 34, and 77 of the Committee on Professional Ethics and Grievances of the American Bar Association." *Richards*, 165 Neb. at 92, 84 N.W.2d at 144.

The formal opinions referred to above provided: "One member of a law firm may not represent defendants in criminal cases which are being prosecuted by another member of the firm who holds the office of prosecuting attorney." ABA Comm. on Prof. Ethics Formal Op. 16 at 254 (1967).

> A city attorney may defend a person charged with a crime only if (1) his duties and his assistant's duties do not include the prosecution in any court of offenders against municipal ordinances or criminal statutes, and (2) if he is not required to defend the accused in any court in which a city official performs the duties of judge or magistrate.

*Id.*, Formal Op. 34 at 277-78. "A prosecuting attorney who is prosecuting a criminal charge against a defendant may not represent the defendant in a personal injury suit while the indictment is pending." *Id.*, Formal Op. 77 at 325.

The facts of the case at bar are clearly distinguishable from *Douglas* and *Richards*, in which we found that obtaining consent from the public was impossible. Since the public could not consent, the provisions set forth in Canon 6 were not applicable. In contrast, in the case at bar, the Omaha City Attorney's office represents both the City and COERS, both of which are capable of and actually did consent to the mutual representation.

We conclude that Miller's argument has no merit. Assuming for the sake of argument that a conflict of interest did exist, Miller would be entitled to no relief. Miller implies that because of the alleged conflict, the judgment should be set aside, the case retried, the issues relitigated, and new attorneys appointed for the City and COERS. Miller is not entitled to such relief.

 Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from a trial court. *Hawkes v. Lewis*, 255 Neb. 447, 586 N.W.2d 430 (1998). The purpose of an inquiry as to standing is to determine whether one has a legally protectable interest or right in the controversy that would benefit by the relief to be granted. *Id.* As an aspect of jurisdiction and justiciability, standing requires that a litigant have such a personal stake in the outcome of the controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf. *Id.*

 In *Hawkes*, the plaintiff brought a medical malpractice action against two physicians, Jeffrey Itkin and Kirk Lewis. At some point in the proceedings, the plaintiff moved to have Itkin's attorney disqualified because the attorney had previously acted as counsel for Lewis. The district court granted the motion, and Itkin timely appealed. The question in *Hawkes* was who had the right to ask the court for the disqualification of the attorney. We concluded that as a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification. In order to have standing, a litigant must assert the litigant's own legal rights and interests, and cannot rest his or her claim on the legal rights or interests of third parties. *Id.*

Thus, we conclude that Miller does not have standing. Both the City's interest and COERS' interest were adverse to Miller's, and they had a right to consent to being represented by the same attorney.

## CONCLUSION

Having found that Miller's assignments of error are without merit, we affirm the judgment of the district court.

AFFIRMED.