IN RE ESTATE OF VELMA L. DICKIE, DECEASED.
DONALD L. FLAMME, APPELLEE AND CROSS-APPELLANT, V.
VERNON FLAMME, PERSONAL REPRESENTATIVE OF THE ESTATE OF
VELMA L. DICKIE, DECEASED, APPELLANT AND CROSS-APPELLEE.
623 N.W. 2d 666

Filed March 30, 2001.   No. S-00-039.

Kevin R. McManaman and Michelle B. Miller, of Erickson & Sederstrom, P.C., for appellant.

Richard Register for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

On July 1, 1999, Donald L. Flamme filed a claim against the estate of his mother, Velma L. Dickie. The personal representative of the estate, Vernon Flamme, filed a disallowance of the claim on December 13. The Dodge County Court found that the disallowance of the claim was out of time and, therefore, allowed the claim in the amount of $2,875. The county court further found that upon allowance of the claim, Donald had no standing to object to the continuation of Vernon's role as personal representative. Therefore, the county court overruled Donald's objection to the inventory of the estate and his application for removal of Vernon as personal representative.

## SCOPE OF REVIEW

■ Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Tilt-Up Concrete v. Star City/Federal, ante* p. 64, 621 N.W.2d 502 (2001).

■ Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from a trial court. *Miller v. City of Omaha*, 260 Neb. 507, 618 N.W.2d 628 (2000).

## FACTS

When Velma died on November 18, 1998, she was survived by her husband, Edward D. Dickie, and her two sons, Vernon and Donald. Velma's last will and testament named Vernon as the personal representative and the sole beneficiary of her estate.

Letters of personal representative were issued to Vernon on June 4, 1999, by the county court. Notice to creditors was pub-

lished in the Fremont Tribune newspaper for 3 consecutive weeks beginning June 10. The notice stated that creditors of the estate were required to file their claims with the county court on or before August 10 or be forever barred. A copy of this notice was sent to Donald on June 15.

On July 1, 1999, Donald filed a claim against the estate for an alleged 50-percent interest in a 1971 mobile home valued at $5,750. On September 17, Donald filed an application to remove Vernon as personal representative due to Vernon's alleged failure to complete an inventory. A short-form inventory was filed September 21, and Donald subsequently filed an objection to the inventory.

The matter was initially scheduled for hearing on November 29, 1999, but was continued to December 13 because Vernon was not in attendance at the November 29 hearing. On December 13, Vernon filed a notice of disallowance of Donald's claim.

On December 21, 1999, the county court entered a written order that set forth findings made at the December 13 hearing. The county court concluded that the disallowance of Donald's claim was out of time. Therefore, the county court allowed Donald's claim in the amount of $2,875. The county court also found that Vernon's failure to attend the hearings caused an unreasonable burden upon Donald. On this basis, the county court allowed a surcharge against Vernon in favor of Donald in the amount of $317.18 for travel expenses, food, and hotel expenses. The county court further concluded that upon allowance of Donald's claim, he had no standing to object to the continuation of Vernon's role as personal representative and, therefore, overruled Donald's objection to the inventory and his application for removal of Vernon as the personal representative.

Vernon appeals from the order allowing Donald's claim, and Donald cross-appeals the county court's determination regarding standing.

## ASSIGNMENTS OF ERROR

Vernon assigns as error that the county court erred in finding that a personal representative cannot disallow a claim after it has been allowed due to the personal representative's failure to

timely file a disallowance of the claim and in allowing Donald's claim against Velma's estate.

On cross-appeal, Donald assigns as error that the county court erred when it found that once his claim was allowed by the court, he no longer had standing to object to the inventory prepared by Vernon or to request that Vernon be relieved of his duties as personal representative of the estate.

## ANALYSIS

We must first determine whether a claim against an estate is irrevocably allowed if the personal representative does not timely give notice of disallowance of the claim after the claim has been filed. Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Tilt-Up Concrete v. Star City/Federal, ante* p. 64, 621 N.W.2d 502 (2001).

Neb. Rev. Stat. § 30-2488(a) (Reissue 1995) states:

As to claims presented in the manner described in section 30-2486 within the time limit prescribed in section 30-2485, the personal representative may mail a notice to any claimant stating that the claim has been disallowed. If, after allowing or disallowing a claim, the personal representative changes his or her decision concerning the claim, he or she shall notify the claimant. The personal representative may not change a disallowance of a claim after the time for the claimant to file a petition for allowance or to commence a proceeding on the claim has run and the claim has been barred. Every claim which is disallowed in whole or in part by the personal representative is barred so far as not allowed unless the claimant files a petition for allowance in the court or commences a proceeding against the personal representative not later than sixty days after the mailing of the notice of disallowance or partial allowance if the notice warns the claimant of the impending bar. Failure of the personal representative to mail notice to a claimant of action on his or her claim for sixty days after the time for original presentation of the claim has expired has the effect of a notice of allowance.

The county court apparently concluded that Vernon did not timely file a notice of disallowance of the claim, and therefore, the claim was allowed by default.

We have not specifically addressed the issue Vernon raises in this case, but the Nebraska Court of Appeals did so in *In re Estate of Krichau*, 1 Neb. App. 398, 501 N.W.2d 722 (1992). Therein, a claim was filed against the estate for expenses incurred while the decedent lived with his daughter-in-law during the last 6 years of his life. The Buffalo County Court disallowed the claim, and the claimant appealed. The district court also ruled against the claimant. On appeal to the Court of Appeals, one of the claimant's assignments of error was that the county court erred in not finding that the claim should be allowed because the personal representative did not timely object as provided in § 30-2488.

In *In re Estate of Krichau*, the claim was filed June 22, 1987, and the personal representative did not allow or disallow the claim. By stipulation of the parties, the personal representative was subsequently removed. A new personal representative was appointed, who then gave notice of disallowance of the claim on September 5. The claimant alleged that the claim had been allowed by the failure of the personal representative to timely object to the claim. The estate argued that § 30-2488 allowed the personal representative to subsequently disallow the claim as long as the claimant was not injured by such disallowance.

The Court of Appeals concluded that § 30-2488 permitted the personal representative to disallow such a claim and that public policy was best served by this interpretation of the statute. The Court of Appeals stated:

> Section 30-2488 also provides that "[i]f, after allowing or disallowing a claim, the personal representative changes his or her decision concerning the claim, he or she shall notify the claimant." This provision can have no purpose other than to allow the personal representative to change his or her mind. We note that the statute does not place a time limit on the personal representative's right to change his or her mind. The only limitation that the statute places on the personal representative's right to change a claim is the rule that a claim cannot be allowed after it has been

barred. There is no reason why the personal representative can change his or her mind when the personal representative formally denied or allowed the claim, but not when the personal representative allowed the claim by inaction. The claimant of a newly disallowed claim would still have 60 days to file a petition for allowance in the court or commence a proceeding against the personal representative. § 30-2488(a). If the Legislature desired to prevent the personal representative from disallowing an allowed claim, it would have expressed its intention in the same manner as it did with respect to barred claims.

If the statute is interpreted to cause the personal representative to irrevocably allow the claim by not giving notice of disallowance within 60 days of its filing, personal representatives will be forced to deny all claims except those claims that are unquestionably good. If the personal representative can change his or her mind and disallow a claim that was once allowed, the worst that could happen is that the claimant would be in a state of uncertainty. If certainty is an important element to a claimant, that claimant can always petition the court to allow the claim. In this regard, the claimant would be in no greater state of uncertainty than any other litigant doing business with a dilatory party and would suffer no greater disadvantage than a claimant who has received notice of allowance when the personal representative still has the power to disallow the claim.

We believe that § 30-2488 permits a personal representative to disallow a claim that has been allowed by the failure to object. We also believe that public policy is best served by this interpretation of the statute and not by a restrictive interpretation of the statute.

*In re Estate of Krichau*, 1 Neb. App. 398, 404-05, 501 N.W.2d 722, 726 (1992).

Section 30-2488 has not been amended since the Court of Appeals interpreted it in *In re Estate of Krichau*, and we agree with the Court of Appeals' interpretation of § 30-2488 therein. Accordingly, the county court erred in concluding that Donald's claim should be allowed based on Vernon's failure to timely disallow the claim.

Donald's attempts to distinguish *In re Estate of Krichau* from the case at bar are without merit. Donald first asserts that once a claimant can no longer file a petition for allowance or once the time to begin a proceeding on the claim passes, then the personal representative cannot change his or her mind on the claim because the claimant will not be able to bring the contested issue before the court for decision. This argument misapplies the relevant statutes. Under Neb. Rev. Stat. § 30-2486 (Reissue 1995), there are two ways in which claims may be brought against a decedent's estate. Under § 30-2486(1), the claimant files a written statement of the claim in the form prescribed by rule with the clerk of the court. Under § 30-2486(2), the claimant commences a proceeding against the personal representative in any court which has subject matter jurisdiction. This requires that commencement of the proceeding occur within the time limit for presenting the claim. Section 30-2486(3) provides in relevant part: "If a claim is presented under subsection (1), no proceeding thereon may be commenced more than sixty days after the personal representative has mailed a notice of disallowance . . . ." According to the plain meaning of § 30-2486(3), a claimant has 60 days to commence a proceeding after the notice of disallowance. Therefore, Donald's argument has no merit.

Donald also argues that he exercised his option to bring the claim against Vernon on the merits and that the county court allowed the claim on the merits. This argument is directly contradicted by the language of the journal entry which states that the disallowance was out of time and that the claim should be allowed on that basis. It is apparent that the county court did not adjudicate the claim on its merits, but found that since Vernon's notice of disallowance was untimely filed, Donald should be awarded what he requested in his claim.

On cross-appeal, Donald asserts that the county court erred when it found that he lacked standing to object to the inventory prepared by Vernon and to request that Vernon be removed as personal representative. The county court's decision regarding Donald's standing was based upon its determination that his claim should be allowed. The county court reasoned that Donald no longer had any interest in the proceeding and therefore

lacked standing to object to the inventory and to seek removal of Vernon as personal representative.

Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from a trial court. *Miller v. City of Omaha*, 260 Neb. 507, 618 N.W.2d 628 (2000). The purpose of an inquiry as to standing is to determine whether one has a legally protectable interest or right in the controversy that would benefit by the relief to be granted. *Id*. As an aspect of jurisdiction and justiciability, standing requires that a litigant have such a personal stake in the outcome of the controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf. *Id*.

Neb. Rev. Stat. § 30-2454 (Reissue 1995) provides:

(a) A person interested in the estate may petition for removal of a personal representative for cause at any time. . . .

(b) Cause for removal exists when removal would be in the best interests of the estate, or if it is shown that a personal representative or the person seeking his appointment intentionally misrepresented material facts in the proceedings leading to his appointment, or that the personal representative has disregarded an order of the court, has become incapable of discharging the duties of his office, or has mismanaged the estate or failed to perform any duty pertaining to the office.

Neb. Rev. Stat. § 30-2209(21) (Cum. Supp. 2000) provides: "Interested person includes heirs, devisees, children, spouses, creditors, beneficiaries, and any others having a property right in or claim against a trust estate or the estate of a decedent, ward, or protected person which may be affected by the proceeding."

In *In re Estate of Emery*, 258 Neb. 789, 606 N.W.2d 750 (2000), we concluded that a creditor had standing to bring a suit based upon § 30-2209(21). Actions in the county court for probate of a will are in rem, and every person interested in the subject matter is a party in the county court whether named or not.

*In re Estate of Emery, supra.* Such person may appear for the purpose of protecting his or her interest in the county court. *Id.* Because Donald is an interested person as defined by § 30-2209(21), we conclude that the county court erred in determining that he did not have standing to object to the inventory or to seek disqualification of Vernon as the personal representative.

## CONCLUSION

For the reasons set forth herein, we reverse the judgment of the county court and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.