BERNARD HRADECKY, APPELLANT, V.
STATE OF NEBRASKA, APPELLEE.
LAURA HRADECKY, APPELLANT, V. STATE OF NEBRASKA,
DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLEE AND
CROSS-APPELLEE, AND BERNARD HRADECKY,
THIRD-PARTY DEFENDANT, APPELLEE
AND CROSS-APPELLANT.
652 N.W.2d 277

Filed October 18, 2002.    Nos. S-01-582, S-01-583.

Maren Lynn Chaloupka, of Chaloupka, Holyoke, Hofmeister, Snyder & Chaloupka, for appellants.

Jay L. Welch, of Locher, Cellilli, Pavelka & Dostal, L.L.C., and, on brief, Thomas D. Wulff, of Welch, White & Wulff, for appellee State of Nebraska.

Mary M. Schott and Edward F. Noethe, of Sodoro, Daly & Sodoro, for appellee Bernard Hradecky (case No. S-01-583).

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Bernard Hradecky and Laura Hradecky, husband and wife, were injured on February 25, 1998, when a snowplow operated by an employee of the State of Nebraska struck a motor vehicle operated by Bernard in which Laura was a passenger. The Hradeckys filed separate personal injury actions against the State in the district court for Kimball County. In Laura's case, the State filed a third-party petition seeking contribution from Bernard. The cases were consolidated for trial, with fact issues in the third-party claim decided by a jury and all other issues decided by the court. Laura recovered damages on her claim, but Bernard did not. The State prevailed in its third-party claim against Bernard for contribution. The Hradeckys, as plaintiffs below, perfected timely separate appeals. Bernard, as the third-party defendant in Laura's case, cross-appealed. We moved the appeals to our docket and granted the Hradeckys' motions to consolidate the actions on appeal. We conclude that all assignments of error are without merit and affirm the judgments entered by the district court.

## FACTS

### PROCEDURAL HISTORY

After their claims were denied by the State Claims Board, the Hradeckys filed separate actions for negligence against the State pursuant to the State Tort Claims Act, Neb. Rev. Stat. § 81-8,209 et seq. (Reissue 1996 & Cum. Supp. 1998). Both alleged that they were injured when their vehicle, operated by Bernard, was struck from behind by a snowplow negligently operated by an employee of the State. The district court granted the Hradeckys'

partial motions for summary judgment in each case, finding the State negligent as a matter of law. The court denied the State's motions for summary judgment in both cases, but granted the State leave to file a third-party petition against Bernard in Laura's case.

The State's operative third-party petition alleged that the collision was proximately caused by Bernard's gross negligence and that the State was entitled to "be recompensed" for any amount for which it was held liable to Laura. The third-party petition also alleged that the State was entitled to an apportionment of fault between it and Bernard pursuant to Neb. Rev. Stat. § 25-21,185.10 (Reissue 1995).

Laura filed a motion requesting the severance of the third-party claim for purposes of trial. In her motion, she alleged that the issues raised by the State in its third-party action were "functionally identical" to the issues raised by the State in its answer to the petition in Bernard's case, which was consolidated with Laura's case for the purpose of trial. She further alleged that she and Bernard would be prejudiced by a failure to sever the third-party claim because a jury would be confused if, at trial, Bernard were represented by one attorney on his primary claim and another on the third-party claim. The district court ruled that the State was entitled to a jury trial on the third-party claim and denied the motion for severance.

The consolidated cases proceeded to trial, with the Hradeckys' claims tried to the court and issues of fact in the State's third-party claim against Bernard tried to a jury. The Hradeckys, as plaintiffs, were represented by the same attorney, and a different attorney represented Bernard as the third-party defendant.

## TRIAL

Trial commenced on December 13, 2000. Bernard testified that on the morning of February 25, 1998, he and Laura traveled from their home in Sterling, Colorado, to Kimball, Nebraska, in order to obtain title to a used vehicle. In ordinary weather and road conditions, the distance can be driven in approximately 1 hour 15 minutes. The Hradeckys left Sterling at 7 a.m., and at that time, the weather was clear but very windy and the roads were dry. Bernard drove.

The Hradeckys concluded their business in Kimball at approximately 9:10 a.m. Bernard testified that at that time, the wind was blowing and it was beginning to snow. Bernard decided to drive home via Interstate 80 rather than on Highway 71 due to the weather conditions. Bernard testified that he entered I-80 at the Kimball exchange at approximately 9:30 a.m. and that at that time, the gate to I-80 was open. Laura also testified that the gate was open at that time.

According to Bernard, weather conditions deteriorated as he drove east. He decreased his speed and began looking for an exit. Although Laura was helping him navigate and locate the exit, they missed the first available exit and continued driving east on I-80. Bernard testified that he was traveling at 25 to 30 miles per hour in the right lane when he heard a sudden rumble and was struck from behind by the snowplow. On cross-examination, he admitted that he saw no other traffic on I-80 prior to the accident.

Steve Sterling, an employee of the Nebraska Department of Roads and the road maintenance supervisor in Kimball, was called as a witness for the State. Sterling testified that he closed both the eastbound and westbound gates to I-80 at the Kimball exchange at 8:30 a.m. When the gates are closed, a "Road Closed" sign is displayed in the center of the gate and flashing lights on a nearby sign indicate the road is closed. The gates cover the entire access ramp, and when they are closed, it is impossible for a vehicle to enter I-80 without driving off the access road and around the closed gates. After closing the gates, Sterling made a sweep east on I-80 and encountered no traffic. He testified that by shortly after 9 a.m., the wind in Kimball was blowing 30 to 40 miles per hour and visibility was getting bad.

The February 25, 1998, entry from Sterling's work diary was admitted as an exhibit at trial. The diary includes an entry that Sterling closed the eastbound I-80 entrance at Kimball at 8:30 a.m., although the "8" is written very boldly and there appears to be text underneath it. Both parties offered expert testimony on the issue of whether the ink used to make the "8" was consistent with other ink on the page and what the text underlying the "8" was. The Hradeckys' expert testified that different ink was used to make the "8" and that the underlying text was the number 10. The State's expert agreed that different ink was used on the "8"

but found that different ink was also used on other entries in the diary on the same day. The State's expert disagreed that the underlying text was a 10 and opined that she could not determine what the text represented.

## POSTTRIAL

At the conclusion of the testimony, the issues of whether Bernard was grossly negligent and whether any such negligence was a proximate cause of the accident were submitted to the jury. Utilizing a special verdict form returned on December 15, 2000, the jury answered both questions in the affirmative.

In an order entered in Laura's case on April 3, 2001, the district court determined that the verdict of the jury finding that Bernard was grossly negligent overcame the limitations of the Nebraska guest statute and permitted Bernard to be held liable for contribution with respect to Laura's claim. The court then apportioned 20 percent of the liability for Laura's injuries to the State and 80 percent to Bernard. The court assessed Laura's total damages at $35,000 and entered judgment against the State and Bernard accordingly. The damage award included special damages proved by Laura in the amount of $19,294.71, consisting entirely of medical expenses reasonably incurred as a result of her injuries. In assessing damages, the court found that Laura's injuries necessitated surgery and restricted her mobility.

In a separate order, also dated April 3, 2001, the court entered written findings on Bernard's action against the State. The court noted that Bernard was aware of the weather and road conditions at the time he entered I-80. The court specifically relied upon the testimony of Sterling and found that the I-80 gate was closed at 8:30 a.m. and that Bernard entered I-80 in spite of clear notice that it was closed. The court found Bernard negligent in entering a road that was closed, continuing on a closed road in zero visibility conditions, failing to exit the closed road when he had an opportunity to do so, failing to pull over when he could no longer maintain proper control, and stopping on I-80 in the left lane of traffic. The court held that Bernard's negligence was greater than that of the State and that he was thus barred from recovery on the basis of comparative negligence. See Neb. Rev. Stat. § 25-21,185.09 (Reissue 1995).

The Hradeckys, as plaintiffs, filed motions for new trial. Bernard also filed a motion for new trial in his capacity as third-party defendant. Pursuant to a stipulation of the parties, the court modified its judgment on the third-party claim to apportion economic and noneconomic damages between the parties pursuant to § 25-21,185.10. The motions for new trial were overruled in all other respects.

## ASSIGNMENTS OF ERROR

The separate appellate briefs filed by the Hradeckys set forth identical assignments of error. Each contends that the district court erred in (1) allowing the State to try its third-party action to a jury; (2) refusing to bifurcate and/or sever the trial of the State's third-party action from the trials of the Hradeckys' cases; (3) treating the jury in the third-party action as an advisory jury; (4) accepting the jury verdict when it was not supported by sufficient evidence; (5) committing multiple and cumulative errors that resulted in the denial of a fair trial which included (a) allowing the State to try the third-party claim to a jury, (b) denying the Hradeckys the right to participate in jury-related activities, (c) denying the Hradeckys the first and last argument during final argument, (d) presenting the jury with two cases wherein the same party was represented by two different attorneys which raised the issues of insurance and collateral sources, (e) allowing improper impeachment of Bernard, (f) allowing improper character evidence concerning the work habits of a State witness, and (g) refusing to permit the Hradeckys to cross-examine a State expert on her adherence to the discipline of graphology; and (6) denying their motions for new trial.

On cross-appeal, Bernard as the third-party defendant, assigns that the court erred in submitting the case to the jury because he was not grossly negligent as a matter of law.

## STANDARD OF REVIEW

■A district court's findings of fact in a proceeding under the State Tort Claims Act, § 81-8,209 et seq., will not be set aside unless such findings are clearly erroneous. *Meyer v. State, ante* p. 545, 650 N.W.2d 459 (2002); *Goodenow v. State,* 259 Neb. 375, 610 N.W.2d 19 (2000).

■ The amount of damages awarded in a case pursuant to the State Tort Claims Act is a matter solely for the finder of fact, whose action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of damages proved at trial. *Woollen v. State,* 256 Neb. 865, 593 N.W.2d 729 (1999).

## ANALYSIS

Although these cases were consolidated for purposes of trial and appeal, we are asked to review two independent judgments. We do so separately, notwithstanding the fact that the Hradeckys' assignments of error in each case are identical.

### CASE NO. S-01-583, LAURA'S PERSONAL INJURY CLAIM

In her first assignment of error, Laura contends that the district court erred in permitting a jury to decide issues of fact pertaining to the State's third-party claim against Bernard. Her position is based upon a provision in § 81-8,214 of the State Tort Claims Act which provides that "[t]he district court, sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any suit or tort claim." Laura argues that the third-party claim against Bernard was related to and dependent upon her claim against the State and that by virtue of the exclusive jurisdiction conferred by § 81-8,214, the State "had no right to a jury trial of its third-party action" against Bernard. Brief for appellant in case No. S-01-583 at 14.

■ We do not reach the merits of this assignment of error because we conclude that Laura lacks standing to assert it. Standing is the legal or equitable right, title, or interest in the subject matter of the controversy which entitles a party to invoke the jurisdiction of the court. *State on behalf of Hopkins v. Batt,* 253 Neb. 852, 573 N.W.2d 425 (1998). In order to have standing, a litigant must assert the litigant's own legal rights and interests and cannot rest his or her claim on the legal rights or interests of third parties. *In re Adoption of Baby Girl H.,* 262 Neb. 775, 635 N.W.2d 256 (2001). The purpose of an inquiry as to standing is to determine whether one has a legally protectable interest or right in the controversy that would benefit by the relief to be granted. *In re Estate of Dickie,* 261 Neb. 533, 623 N.W.2d 666 (2001).

Although we have characterized standing as a "jurisdictional component of a party's case," *Chambers v. Lautenbaugh*, 263 Neb. 920, 925, 644 N.W.2d 540, 546 (2002), we have also applied principles of standing to determine whether a party may assert specific issues in an action over which a court has subject matter jurisdiction. For example, in *Miller v. City of Omaha*, 260 Neb. 507, 618 N.W.2d 628 (2000), an action brought by a former city employee against the City of Omaha and the City of Omaha Employees' Retirement System to recover pension benefits, we held that the employee did not have standing to seek disqualification of a city attorney from representing both the city and the retirement system. Similarly, in *Hawkes v. Lewis*, 255 Neb. 447, 586 N.W.2d 430 (1998), a medical malpractice action against two physicians, we held that the plaintiff lacked standing to seek disqualification of an attorney representing one of the defendants on the ground that he had previously represented the other defendant. In *In re Adoption of Baby Girl H.*, *supra*, this court determined that a putative father who had not complied with statutory requirements for the assertion of parental rights lacked standing to assert judicial error in the entry of an adoption decree.

It is true that the State's third-party claim is related to Laura's tort claim against the State in that the State sought contribution from the third-party defendant with respect to any liability it had to Laura. Under Neb. Rev. Stat. § 25-331 (Reissue 1995), a third-party claim can be asserted by a defendant only if the trial court determines that the proposed third-party defendant is or may be liable to the defendant for all or part of the plaintiff's claim. See *Slaymaker v. Breyer*, 258 Neb. 942, 607 N.W.2d 506 (2000). However, none of the legal or factual issues presented in Laura's claim against the State were at issue in the third-party claim. The basic function of third-party practice is the original defendant's seeking to transfer to the third-party defendant the liability asserted by the original plaintiff. *Id.*; *Church of the Holy Spirit v. Bevco, Inc.*, 215 Neb. 299, 338 N.W.2d 601 (1983). Here, the district court, sitting without a jury pursuant to § 81-8,214, determined that Laura was entitled to recover damages in the amount of $35,000, thereby completely resolving her claim. The jury's findings were utilized by the court only to determine whether the State would be responsible for all of

Laura's damages or whether it was entitled to contribution from Bernard based upon his conduct. The third-party claim thus involved the rights and interests of only the State and Bernard, not those of Laura. Thus, we conclude that she has no standing to raise the issue of whether the State had a right to a jury trial of its third-party claim.

In her second assignment of error, Laura contends that having resolved that the third-party claim could be tried to a jury, the district court erred in failing to bifurcate or sever the third-party claim for separate trials. Laura clearly does have standing to assert this issue. Section 25-331 provides in part:

> The court on its own motion, *or motion of any party*, may move to strike the third-party claim, or for its severance or separate trial if the third-party claim should delay trial, might tend to confuse a jury, *or in any way jeopardize the rights of the plaintiff.*

(Emphasis supplied.) Laura could and did file a motion to sever the third-party claim for separate trials on the ground of potential jury confusion prejudicial to her interests as plaintiff. Although this motion does not recite that it was filed pursuant to § 25-331, we treat it as such.

We have not previously identified the standard by which we review a trial court's ruling on a motion to sever a third-party claim. However, we have held that the matter of granting leave to file a third-party complaint pursuant to § 25-331 is within the discretion of the trial court. *Employers Reins. Corp. v. Santee Pub. Sch. Dist. No. C-5*, 231 Neb. 744, 438 N.W.2d 124 (1989); *Life Investors Ins. Co. v. Citizens Nat. Bank*, 223 Neb. 663, 392 N.W.2d 771 (1986). We therefore conclude that a motion to sever a third-party claim pursuant to § 25-331 is addressed to the discretion of the trial court, and an order granting or denying such motion is reviewed by an appellate court for abuse of discretion. See, *Swenson v. Suhl*, 19 F.R.D. 517, 519 (D. Neb. 1956) (holding that "motion for the vacation of an order allowing third-party procedure, as also a motion in the first instance for its allowance, is addressed to the mature and informed discretion of the court"); *Beach v. Smith*, 298 S.C. 424, 380 S.E.2d 869 (S.C. App. 1989) (holding whether to grant motion to strike third-party claim is addressed to sound discretion of trial court).

Implicit in the trial court's denial of the motion to sever was a belief that it could conduct a bench trial on the Hradeckys' consolidated personal injury claims and a jury trial on the State's third-party claim simultaneously without confusing the jury or otherwise prejudicing the rights of the Hradeckys. From our review of the entire record, we conclude that the trial court accomplished that objective. Throughout the trial, the court drew a clear line of distinction between fact issues which would be submitted to the jury and those to be decided by the court. In its opening remarks to the jury, the trial court stated that it would decide some issues of fact and the jury would decide other issues. The jury was excused during portions of the trial that pertained solely to the issue of the Hradeckys' damages. Prior to deliberations, the jury was specifically instructed: "The Court not you the jury will decide the issues involved in Laura Hradecky's claim against the State of Nebraska." The verdict form returned by the jury related solely to disputed issues of fact in the State's third-party claim against Bernard, with no reference to Laura's claim. The court made separate findings of fact with respect to Laura's entitlement to damages and the amount thereof.

Laura argues that because Bernard had separate counsel with respect to the third-party claim, "the common sense explanation for the presence of two attorneys for [Bernard] was that one was hired by an insurer while the other was hired by [Bernard] and [Laura]." Brief for appellant in case No. S-01-583 at 23. The record contains no reference to the subject of liability insurance. Whether the jury may have made the suggested inference from the fact that Bernard was represented by two lawyers is entirely speculative and, in any event, would have no bearing on Laura's case, which was decided by the court, not by the jury. We conclude that the district court did not abuse its discretion in denying Laura's motion to sever the third-party claim.

In her third assignment of error, Laura contends that the trial court erred in treating the jury that decided the State's third-party action against Bernard in Laura's case as an advisory jury in Bernard's case, where all parties did not consent to an advisory jury and where counsel for Bernard was not allowed to voir dire, select, propose instructions, or argue to the jury. On its face, this assignment of error has no relationship to Laura's case. Moreover,

we find nothing in the record to suggest that the court utilized the jury in any "advisory" capacity. As discussed above, the record is clear that the jury decided two disputed issues of fact with respect to the third-party claim and had no other role in the trial. This assignment of error is without merit. Likewise, there is no merit to Laura's fourth assignment of error in which she contends that the district court erred in "accepting the jury's verdict as her own in the face of insufficient evidence to support the verdict." The record clearly reflects that the court made its own independent findings that Laura sustained and was entitled to recover damages in the amount of $35,000.

In her fifth assignment of error, Laura alleges that "[m]ultiple and cumulative errors" combined to deprive her of a fair trial. We have recognized the doctrine of cumulative error in the context of a criminal jury trial, stating that while one or more trial errors might not, standing alone, constitute prejudicial error, "their cumulative effect was to deprive the defendant of his constitutional right to a public trial by an impartial jury." *Wamsley v. State*, 171 Neb. 197, 209, 106 N.W.2d 22, 29 (1960). We have not applied this doctrine in a civil case. Assuming without deciding the general proposition that the doctrine could be applied in a civil case, there is no basis for its application in this case. The first three "cumulative errors" alleged by Laura are simply a restatement of her contention that the jury was improperly utilized in this case. We have found those arguments to be without merit. Other "cumulative errors" alleged by Laura include improper cross-examination of Bernard, improper admission of character evidence with respect to one of the State's witnesses, a ruling made during the cross-examination of an expert witness called by the State, and the sequence in which closing arguments were presented by counsel. Although Laura includes these in what she characterizes as a "laundry list of errors," brief for appellant in case No. S-01-583 at 30, she does not otherwise discuss or argue them. Errors assigned but not argued will not be addressed on appeal. *Skinner v. Ogallala Pub. Sch. Dist. No. 1*, 262 Neb. 387, 631 N.W.2d 510 (2001).

In her final assignment of error, Laura contends that the district court erred in denying her motion for new trial based upon an alleged inadequacy of her damage award. The district court

awarded $19,294.71 in economic damages, which represented all medical bills proved to have been necessitated by Laura's injuries, and $15,705.29 in noneconomic damages. Laura argues that the latter amount was inadequate compensation for her pain and suffering and the permanency of her injuries.

There was conflicting evidence on the issue of noneconomic damages. Laura testified that she continued to experience pain, numbness, and limitation of motion in her left arm and shoulder and in her neck and that she sometimes awoke during the night due to pain. She testified that she is left handed but is learning to use her right hand to brush her teeth and wash and comb her hair because using her left hand causes pain. Laura further testified that she is unable to do laundry or vacuum due to the pain. There was evidence that Laura was energetic and involved in family activities prior to the accident, but is less energetic and more moody since the accident due to her pain.

However, the record also establishes that Laura was disabled prior to the accident due to severe type I lupus. She first sought medical attention for neck and back pain approximately 1 month following the accident. Her physician diagnosed a ruptured cervical disk for which she underwent surgery on June 1, 1998. Laura saw her surgeon for postoperative examinations in July and October. At the time of the last visit, the surgeon noted that she was " 'doing just perfect' " and " 'really has no symptoms.' " Laura's physician did not place any physical restrictions on her activities.

As noted above, the amount of damages awarded in an action under the State Tort Claims Act is a matter solely for the factfinder, whose action in this respect will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of damages proved at trial. *Woollen v. State*, 256 Neb. 865, 593 N.W.2d 729 (1999). Based upon our review of the record, we conclude that the damage award of $35,000 meets this test and was therefore not inadequate. Accordingly, the district court did not err in denying Laura's motion for a new trial.

## Cross-Appeal

Bernard's sole argument on cross-appeal is that the district court erred in submitting the issue of gross negligence to the

jury because, as a matter of law, he was not grossly negligent in the operation of his vehicle. The jury was instructed that Bernard was grossly negligent in (1) leaving a place of safety in Kimball and choosing to drive in blizzard conditions with near zero visibility, (2) driving around the closed and locked gate at the Kimball entrance ramp, (3) continuing to attempt to drive on I-80 when it was not safe to do so and he had opportunities to exit or pull off to the side, and (4) failing to maintain a reasonable lookout for snow removal vehicles or other road maintenance vehicles while traveling on a closed highway. There is evidence in the record to support each of these specifications of negligence, although there is also evidence to the contrary.

Gross negligence is " 'great or excessive negligence, or negligence in a very high degree. It indicates the absence of even slight care in the performance of a duty.' " *Youngs v. Potter*, 237 Neb. 583, 588, 467 N.W.2d 49, 52 (1991), quoting *Carlson v. Waddle*, 223 Neb. 671, 392 N.W.2d 777 (1986). We understand Bernard to argue that even if the jury found he had committed all of the acts of negligence enumerated in the instruction, it could not have found that he was grossly negligent because such acts do not establish the absence of "slight care." He points to evidence offered at trial that was favorable to him on this issue, including evidence that he slowed his speed due to the weather conditions and that his headlights and taillights were on. However, we agree with the district court that there was sufficient evidence which, if believed by the factfinder, would amount to gross negligence. One who intentionally and deliberately enters a closed roadway and continues to drive on such roadway in near zero visibility can reasonably be found to be exhibiting the absence of even slight care, even if the person drives slowly and with his or her headlights on. We find no error in the submission of this issue to the jury.

CASE NO. S-01-582, BERNARD'S PERSONAL INJURY CLAIM

As noted above, Bernard's assignments of error in this case are identical to those of Laura in her separate case. The first four assignments of error pertain to the use of a jury to determine issues of fact with respect to the State's third-party claim against Bernard. That claim was asserted in Laura's personal injury case, which is before us as case No. S-01-583 and discussed

above. There is no indication in the record that the jury considered or decided any issue with respect to Bernard's personal injury claim against the State, case No. S-01-582. To the extent that Bernard argues that the district court accepted or in some way utilized the jury's verdict in resolving Bernard's separate claim, his argument finds no support in the record. The court's judgment in this case makes no reference to the jury verdict. It includes specific findings of fact which support the court's conclusion that Bernard was negligent to a degree which barred his recovery, including a finding that "the gate was closed as of 8:30 a.m. and that Mr. Hradecky had entered the main lanes of I-80 in spite of the clear notice that I-80 was closed." Bernard's first four assignments of error are without merit.

Bernard raises the same "cumulative errors" issues assigned by Laura and discussed above. They are without merit. Finally, Bernard contends that the district court erred in denying his motion for new trial. His brief identifies no specific reasons or arguments in support of this assignment, other than the arguments on his other assignments of error. We conclude that the district court did not err in denying Bernard's motion for new trial.

CONCLUSION

For the reasons discussed above, we find no reversible error in either of these consolidated appeals, and therefore affirm both judgments.

AFFIRMED.

WRIGHT, J., not participating.