ELEINE P. HAMPSHIRE, APPELLANT, V.
JACKIE D. POWELL, APPELLEE.

626 N.W. 2d 620

Filed May 8, 2001.    No. A-99-1452.

Douglas G. Pauley, of Conway, Pauley & Johnson, P.C., for appellant.

Robert J. Parker, of Seiler, Parker & Moncrief, P.C., for appellee.

HANNON, CARLSON, and MOORE, Judges.

HANNON, Judge.

## INTRODUCTION

Eleine P. Hampshire brought suit against Jackie D. Powell (Powell) alleging that while acting as the attorney in fact for Fae Powell (the decedent), Powell had changed the names on certificates of deposit (CD's) totaling $629,964.67 which had been in the sole name of the decedent and placed them in the decedent's name and either in joint ownership or payable on death (POD) with various nieces and nephews, thus changing the persons who would have ultimately received the value of the CD's upon the decedent's death. Hampshire alleged that she was a beneficiary of the decedent's will; that as a result of Powell's actions, the $629,964.67 was diverted from the decedent's estate; and that under the decedent's last will and testament, $78,745.58 from those CD's would have passed to her. Hampshire based her cause of action on fraud. After a trial on stipulated evidence, the trial court found that Powell had changed the CD's, but did so pursuant to the decedent's direction, and dismissed the petition. Hampshire assigns four errors, essentially alleging that the trial court erred as a matter of law in finding for Powell. We dismiss the appeal for lack of jurisdiction because if the names on the CD's were improperly changed, any cause of action to recover property of the estate would have passed to the decedent's personal representative, and in the absence of allegations justifying an exception, a beneficiary of the estate does not have standing to bring the action. We therefore dismiss the appeal for lack of jurisdiction without considering the assigned errors.

## PROCEDURAL BACKGROUND

Hampshire filed a petition on September 30, 1998, alleging that the decedent died testate on December 4, 1997; the identity of the decedent's heirs at law and the devisees under her will; and that as a sister to the decedent, she was both. The decedent's last will and testament, dated February 7, 1995, was attached to

the petition. It appointed Powell as personal representative of her estate. There are no allegations in the petition concerning the administration of the decedent's estate.

The petition further alleged that prior to the decedent's death, as her attorney in fact, Powell had changed the title and/or beneficiary designation on many of the decedent's CD's from that of her name alone to her jointly or payable on death to various of her nieces and nephews. All of the above facts are alleged in detail in the petition, but for purposes of this appeal, such detail is unnecessary.

The petition contained a copy of the power of attorney document dated March 28, 1994, which appointed Powell as attorney in fact. The document gives the attorney in fact broad general power to do almost any act for the decedent. It would clearly give the attorney authority to change how the decedent held her property, but it does not specifically authorize him to change the manner in which the decedent held her CD's.

Hampshire alleged that the total value of the CD's changed to joint tenancy or POD was $629,964.67; that the decedent's estate was thus diminished in that amount; that Powell profited from a number of the changes in ownership; that Hampshire would have received $78,745.58 if the CD's had remained in the estate and passed to her by her sister's will; that she had demanded $78,745.58 from Powell; and that Powell had refused to pay her.

The petition further alleges that Powell's acts were fraudulent as to "[Hampshire] for the reason that the document granting power of attorney . . . did not expressly provide for making gifts to himself or to others." There is no other allegation of fraud or misconduct by Powell. Hampshire prayed for judgment against Powell in the amount of $78,745.58, plus interest at 12 percent per annum beginning on December 4, 1997.

Powell filed an answer which specifically denied substantially all of the allegations of the petition and also affirmatively alleged that he had at all times made the proper disposition of the decedent's property and funds as directed by her for her benefit. Powell affirmatively alleged that the decedent had designated payment on death certificates before she executed her will which did not correlate with the beneficiaries in her will and that

she specifically directed him to make the payment on death designations on the CD's. Powell also alleged that Hampshire had failed to name the necessary and proper parties as defendants. He prayed that Hampshire's petition be dismissed.

Hampshire filed a motion for partial summary judgment asking the court to determine that there was no material issue of fact as to the allegations in paragraphs 8 and 10 of her petition. Paragraph 8 alleged that the changes were fraudulent because the power of attorney did not expressly provide for Powell to make gifts to himself and others, and paragraph 10 sought prejudgment interest. This motion was denied.

## SUMMARY OF EVIDENCE

The matter came on for a stipulated bench trial on August 25, 1999. The parties stipulated that if Powell was called to testify, he would testify to the following facts: The directions from the decedent regarding the CD changes and addition of the POD designations were not given to him until sometime in 1997, there were no directions to change the CD or POD designations at the time the power of attorney was executed in 1994, the intent of the POD designations was to cause the money from the CD's to bypass the decedent's estate and go to her nieces and nephews directly, the beneficiaries of the POD designations paid no consideration or transferred any property to Powell or the decedent in exchange for the designations, he made the POD designations pursuant to his understanding that he had the power to do so under the power of attorney and pursuant to the decedent's direction, he acted solely for the decedent's benefit as her agent, and he refrained from doing any harmful act to the decedent.

The parties further stipulated that the decedent had 10 nieces and nephews, one of which was Powell, that Powell had conducted other affairs for the decedent pursuant to the power of attorney, and that he would occasionally move the CD's to different places to obtain a better interest rate.

In an affidavit of Powell, admitted without objection, he testified that the decedent had directed him to add the nieces' and nephews' names to the CD's so that she would not have to change her will. Powell stated that the decedent told him that she did not want to go through the "hassle" of changing her will

as she had done previously and asked if there was a way she could give the CD's to her nieces and nephews upon her death, rather than to her sisters. Powell stated that he consulted the president of a bank and a personal banker and was advised that by adding POD designations to the CD's, they would automatically pass to the nieces and nephews, rather than to the sisters as directed in her will. He again consulted the decedent, who directed him to change the CD's. The decedent stated that she wanted to do it that way because her sisters had received a large inheritance from another sister and did not need the money.

The evidence also clearly established the CD's that were owned by the decedent, the amount of the CD's, and the dates and the changes in the names made on them by Powell pursuant to the power of attorney.

On December 17, 1999, the court rendered its decision which contained specific findings which can be summarized as a finding that Powell had changed the names on the CD's pursuant to the decedent's direction. The court dismissed the action.

## ASSIGNMENTS OF ERROR

Hampshire assigns that the trial court erred (1) in failing to grant her motion for partial summary judgment; (2) in finding that the power of attorney expressly allowed Powell to change, without consideration, the beneficiary designations on the decedent's CD's; (3) in finding that she failed to prove a prima facie case of fraud; and (4) in failing to find that she was entitled to interest on the judgment amount at 12 percent per year.

## STANDARD OF REVIEW

■ Notwithstanding whether or not the parties raise the issue of jurisdiction, an appellate court has a duty to raise and determine the issue of jurisdiction sua sponte. *Henderson v. Department of Corr. Servs.*, 256 Neb. 314, 589 N.W.2d 520 (1999); *Schmidt v. State*, 255 Neb. 551, 586 N.W.2d 148 (1998). We do so in this case.

■ A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent from the lower court's decision. *Beachy v. Becerra*, 259

Neb. 299, 609 N.W.2d 648 (2000); *Greater Omaha Realty Co. v. City of Omaha*, 258 Neb. 714, 605 N.W.2d 472 (2000).

## ANALYSIS

■ Neb. Rev. Stat. § 25-301 (Cum. Supp. 2000) provides that subject to an exception not at issue in this case, "[e]very action shall be prosecuted in the name of the real party in interest." See, also, *Eli's, Inc. v. Lemen*, 256 Neb. 515, 591 N.W.2d 543 (1999). The Nebraska Supreme Court has stated:

> "To determine whether a party is a real party in interest, the focus of the inquiry is whether that party has standing to sue due to some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy."

*Id.* at 527, 591 N.W.2d at 552 (quoting *Misle v. Misle*, 247 Neb. 592, 529 N.W.2d 54 (1995)).

■ Standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf. *Hagan v. Upper Republican NRD*, 261 Neb. 312, 622 N.W.2d 627 (2001). See *Neb. Against Exp. Gmblg. v. Neb. Horsemen's Assn.*, 258 Neb. 690, 605 N.W.2d 803 (2000). The question whether a party who commences an action has standing and is therefore the real party in interest is jurisdictional. *Eli's, Inc., supra.* See *Hagan, supra.*

■ In the case at hand, Hampshire sued Powell for fraudulent actions taken in his capacity as the decedent's attorney in fact prior to the decedent's death. Neb. Rev. Stat. § 30-2476 (Reissue 1995) provides:

> Except as restricted or otherwise provided by the will or by an order in a formal proceeding . . . a personal representative, acting reasonably for the benefit of the interested persons, may properly:
>
> . . . .
>
> (22) prosecute or defend claims or proceedings in any jurisdiction for the protection of the estate and of the personal representative in the performance of his or her duties.

Further, Neb. Rev. Stat. § 30-2470 (Reissue 1995) provides that "[e]xcept as otherwise provided by a decedent's will, every per-

sonal representative has a right to, and shall take possession or control of, the decedent's property" and that the personal representative "may maintain an action to recover possession of property or to determine the title thereto." There is general authority that

> [a]s a general rule, the personal representative is the proper person to proceed for the recovery of assets of the estate, but the beneficiary may prosecute claims where the personal representative cannot or will not act, or where the personal representative himself . . . obstructs the natural course which the law establishes for the transmission of the estate to the heir.

33 C.J.S. *Executors and Administrators* § 190 (1998).

In *Beachy v. Becerra*, 259 Neb. 299, 304, 609 N.W.2d 648, 651-52 (2000), the Supreme Court was faced with the issue of "whether the personal representative's right to maintain an action on behalf of the estate to recover property wrongfully transferred by the decedent during her lifetime is exclusive, or whether an heir has a similar right which is coextensive with that of the personal representative." The court ultimately dismissed the appeal for mootness without deciding the question above. The court did note that prior to the adoption of the Uniform Probate Code in Nebraska, it had held under certain circumstances an heir may maintain an action to enforce an obligation owed to the estate where the administrator had refused to do so. See *Prusa v. Everett*, 78 Neb. 250, 113 N.W. 571 (1907). We note that there is no allegation or evidence showing that the personal representative of the decedent's estate refused to maintain such an action.

The *Beachy* court cited general authority that

> "where the executor or administrator has been guilty of fraud of collusion with the party to be sued, or, more generally, where the interests of the personal representative are antagonistic to those of the heirs or distributees, the heirs or distributees may maintain actions relating to the personalty of the estate in their own names. Similarly, when the legal representative has failed or refused to act, the heir may maintain an action to recover assets for the benefit of the estate."

259 Neb. at 304, 609 N.W.2d at 652 (quoting 31 Am. Jur. 2d *Executors and Administrators* § 1285 (1989)).

■ In the case at hand, we are presented with a situation similar to that in *Beachy*. Hampshire did not allege in her petition any exceptions to the general rule that the personal representative is the proper person to proceed for the recovery of the assets of the estate. The Nebraska Supreme Court has stated: "[O]ne claiming under an exception to a general rule carries the burden of alleging and proving facts which would bring him within such exception." *Harrison State Bank v. First Nat. Bank*, 116 Neb. 456, 462, 218 N.W. 92, 94 (1928). We find no evidence in the transcript or bill of exceptions which shows that either party raised the issue before or at trial. The petition alleges that Powell fraudulently transferred the CD's in his capacity as attorney in fact, but does not allege that he is the personal representative of the decedent's estate, that his interests as personal representative are antagonistic to those of Hampshire, or that he has failed or refused to act in an action to recover assets for the benefit of the estate.

If Powell's actions with the CD's were fraudulent, the funds from the CD's would not pass to the beneficiaries of the estate, but they would pass to the estate and be distributed from the estate according to the decedent's will. As an example of the necessity of this procedure, we point out that the CD's were not specifically devised, and if they were in the estate, Hampshire would have received whatever benefit she would receive from the estate after payment of claims, costs of administration, and applicable death taxes. This is a well-established system which exists for good reason. As a devisee, Hampshire has but a prospective interest in any property that the decedent owned.

■ We recognize the rule that "a person nominated in a will as executor is not 'legally competent' to act in that capacity, where his duties would require him to prosecute on behalf of adversary litigants, a suit which he would at the same time defend as an individual." *Moss v. Eaton*, 183 Neb. 71, 74, 157 N.W.2d 883, 886 (1968) (quoting *In re Estate of Blochowitz*, 124 Neb. 110, 245 N.W. 440 (1932)). If the personal representative has a conflict, the proper procedure would be for the interested beneficiary to petition the court for removal of the per-

sonal representative pursuant to Neb. Rev. Stat. § 30-2454 (Reissue 1995) or to plead and prove that an exception to the general rule applied.

Under our system of pleading and practice, and the adversarial process, issues to be tried must be formed by pleadings. See *State v. Jacob*, 256 Neb. 492, 591 N.W.2d 541 (1999). The purpose of pleadings is to frame the issues upon which a cause is to be tried, and the issues in a given case will be limited to those which are pled. *Alegent Health Bergan Mercy Med. Ctr. v. Haworth*, 260 Neb. 63, 615 N.W.2d 460 (2000). Because we find that Hampshire neither pleaded nor proved that any of the exceptions to the general rule applied, we therefore hold that she has no standing to bring an action as an individual against the individual who allegedly wronged the decedent. The clear rule is that the personal representative is the proper party to sue to recover assets of the estate or for alleged wrongs done to a decedent.

Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. See *Miller v. City of Omaha*, 260 Neb. 507, 618 N.W.2d 628 (2000). Because Hampshire has no standing to sue Powell, we therefore have no jurisdiction over the appeal, and the appeal is dismissed.

APPEAL DISMISSED.