STEVE NIELSEN ET AL., APPELLANTS, V. DONALD E. NIELSEN
AND CLARENCE MOCK, APPELLEES.

700 N.W.2d 675

Filed July 26, 2005.    No. A-04-615.

Richard J. Thramer for appellants.

Mark D. Fitzgerald, of Fitzgerald, Vetter & Temple, for appellee Donald E. Nielsen.

Clarence E. Mock and Matthew M. Munderloh, of Johnson & Mock, for appellee Clarence Mock.

INBODY, Chief Judge, and SIEVERS and CASSEL, Judges.

SIEVERS, Judge.

Steve Nielsen, Michael Nielsen, Don Duane Nielsen, and the Estate of Barbara Jean Nielsen appeal from the decision of the district court for Cuming County granting summary judgment in favor of Donald E. Nielsen and Clarence Mock. We do not reach the merits of the summary judgment, because we find that the plaintiffs-appellants lack standing.

### FACTUAL AND PROCEDURAL BACKGROUND

Donald E. Nielsen (Donald) and Barbara Jean Nielsen (Barbara) were married on June 29, 1951, in Blair, Nebraska. During the marriage, three children were born: Don Duane, Steve, and Michael. On September 6, 1989, Barbara filed a petition for dissolution of marriage, and her amended petition was filed on October 16. On November 20, 1989, the divorce decree was entered, in which the court approved the property settlement agreement entered into by Donald and Barbara. Also on November 20, and pursuant to the property settlement, Barbara received a lump-sum payment of $625,000 from Donald. During the divorce, Donald was represented by his longtime attorney, Mock, and Barbara was represented by William Line. At the time of the decree, Barbara had terminal cancer, and she died of complications related to such cancer on July 24, 1990.

On November 13, 2003, Steve, Michael, Don Duane, and the Estate of Barbara Jean Nielsen (hereinafter collectively referred to as "Plaintiffs") filed a petition against Donald and Mock. Plaintiffs alleged that Steve, Michael, and Don Duane are the

only heirs pursuant to the will of Barbara and that each was to receive an equal share of her estate, which the record shows was executed on November 20, 1989—the same day as the divorce. In count I of the petition, Plaintiffs alleged that during the course of her marriage to Donald, Barbara was never fully informed as to the value and type of investments composing the marital estate. Plaintiffs also alleged that after filing the petition for dissolution of marriage, Donald conspired with others (including Mock and Line) to conceal from Barbara and the court the actual value and extent of the entire marital estate in an effort to procure Barbara's acquiescence to a proposed distribution of the marital estate. Plaintiffs alleged that at all relevant times, Barbara was suffering from terminal cancer, and that she relied solely upon the fraudulent representation of the value of the marital estate and upon the advice of her counsel, Line, with regard to the truth of Donald's representations. Plaintiffs alleged that unbeknownst to Barbara, said representations as to the value of the marital estate were false, and known to be false by Donald, Mock, and Line, who had agreed to and entered into a plan to defraud Barbara as to the value of the marital estate. Plaintiffs alleged that Donald and Mock obtained an agreement of compliance with Barbara's attorney, Line, in furtherance of their scheme to defraud Barbara, through the payment of $25,000, of which $10,000 was paid to Line in cash at the direction of Donald and the remaining $15,000 was paid to Line through the award of attorney fees. Plaintiffs alleged that such amount bore no justification to the billable hours expended by Line.

Plaintiffs also alleged that Rod Zwygart, a certified public accountant and the personal accountant of Donald and Barbara, periodically, at Donald's request, prepared statements of assets and liabilities of Donald, which statements reflected only the cost of said assets and reflected only the assets which were disclosed to Zwygart by Donald or directed to be included by Donald, but that the actual assets of Donald greatly exceeded those of which were disclosed to Zwygart. Plaintiffs alleged that the financial statement presented to Barbara, and relied upon by her in the formulation of her decision to accept the proposed stipulation and property settlement agreement, was based largely upon a cost accounting method of the disclosed assets and was

not reflective of their true fair market value and that the financial statement did not contain an accurate statement of the entire marital estate. The pleading further alleged that such false and misleading financial information was presented to Barbara as fair and accurate valuations of the entire marital estate and that Barbara accepted Donald's settlement proposal based upon such false and misleading information and without the independent advice of counsel because Line had accepted $10,000 in cash from Donald and was to be paid $15,000 in attorney fees. It is alleged that the first time Plaintiffs became aware of the conspiracy to defraud Barbara was after a meeting in December 2001, requested by Zwygart, in which Zwygart revealed such to Don Duane.

Plaintiffs alleged that Barbara's divorce from Donald was procured by fraud and that Donald concealed from Barbara and the court the true value and extent of the marital estate in order to effectuate a decree incorporating Donald and Barbara's property settlement agreement, which was procured through the use of bribery, deceit, misrepresentation, concealment of assets, and fraud.

In count II of the petition, Plaintiffs alleged that Steve, Michael, and Don Duane are the only heirs to the estate of Barbara and that prior to her filing the petition for dissolution of marriage, Barbara executed a last will and testament specifically disinheriting Donald and leaving her entire estate to Donald and Barbara's three sons. As said, the record shows the date of her will to be November 20, 1989. Plaintiffs alleged that the intent of Donald in perpetrating the fraud upon Barbara was to prevent the effective distribution of her interest in the marital estate to their three sons, as set forth in her last will and testament. Plaintiffs alleged that the intent of Donald, Mock, and Line was not only to deny Barbara her rightful share of the marital estate, but also to deny Steve, Michael, and Don Duane the benefits as set forth in Barbara's last will and testament. Plaintiffs alleged that by virtue of the conspiracy, Steve, Michael, and Don Duane were deprived of their rightful shares of Barbara's estate, resulting in damages, including loss of enjoyment of life, loss of educational opportunities, loss of the use and economic benefits derived from their rightful inheritance, and prejudgment interest.

Plaintiffs requested judgment against Donald and Mock "on Count I for determination by the Court of a fair and equitable distribution of the marital estate, said sum to be in excess of $20,000,000.00, and on Count II, a sum determined by the Court to fairly and adequately compensate Plaintiff[s] in an amount to be determined."

On February 23, 2004, Mock filed a motion for summary judgment, alleging that "there is no genuine issue as to any material fact and [he] is entitled to judgment as a matter of law." On February 26, Donald filed his motion for summary judgment, also alleging that "there is no genuine issue or conflict as to any material fact and [he] is entitled to judgment as a matter of law." On March 3, Plaintiffs filed separate resistances to the motions for summary judgment, the details of which are not germane to our resolution of this appeal. A hearing on the motions for summary judgment was held on March 4 and continued on April 1. Both motions were heard together because the evidence was the same in both. Subsequent to the April 1 hearing, Donald and Mock submitted written objections to the exhibits.

The district court's order was filed on May 6, 2004. The district court granted both Mock's and Donald's motions for summary judgment, finding that there was no genuine issue shown by the evidence as to reliance by Barbara upon any statement made by Mock, that the undisputed evidence contravened any claim of fraudulent misrepresentation by Donald, and that the evidence disclosed no underlying tort as would be required by a theory of civil conspiracy between Donald and Mock. Plaintiffs now appeal.

## ASSIGNMENTS OF ERROR

Plaintiffs' assignments of error generally contend that the trial court wrongfully entered summary judgment, but because we find a lack of standing, we do not detail such assignments.

## ANALYSIS

Before we can reach the merits of this case, we must determine whether Plaintiffs have standing to invoke the court's jurisdiction. Standing was raised for the first time on appeal; however, "[b]ecause the requirement of standing is fundamental to a court's exercising jurisdiction, a litigant or court before

which a case is pending can raise the question of standing at any time during the proceeding." *Mutual Group U.S. v. Higgins*, 259 Neb. 616, 619, 611 N.W.2d 404, 408 (2000).

Standing is the legal or equitable right, title, or interest in the subject matter of the controversy which entitles a party to invoke the jurisdiction of the court. *Crosby v. Luehrs, supra*; *Hradecky v. State*, 264 Neb. 771, 652 N.W.2d 277 (2002). Standing relates to a court's power, that is, jurisdiction, to address the issues presented and serves to identify those disputes which are appropriately resolved through the judicial process. *Governor's Policy Research Office v. KN Energy*, 264 Neb. 924, 652 N.W.2d 865 (2002); *Mutual Group U.S. v. Higgins*, 259 Neb. 616, 611 N.W.2d 404 (2000). Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. *Governor's Policy Research Office v. KN Energy, supra*; *Miller v. City of Omaha*, 260 Neb. 507, 618 N.W.2d 628 (2000).

The purpose of an inquiry as to standing is to determine whether one has a legally protectable interest or right in the controversy that would benefit by the relief to be granted. *Crosby v. Luehrs, supra*; *Hradecky v. State, supra*. In order to have standing, a litigant must assert the litigant's own legal rights and interests and cannot rest his or her claim on the legal rights or interests of third parties. *Id*. The litigant must have some legal or equitable right, title, or interest in the subject of the controversy. See, *Crosby v. Luehrs, supra*; *Chambers v. Lautenbaugh*, 263 Neb. 920, 644 N.W.2d 540 (2002).

*Adam v. City of Hastings*, 267 Neb. 641, 646, 676 N.W.2d 710, 714 (2004). "As an aspect of jurisdiction and justiciability, standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf." *Mutual Group U.S. v. Higgins*, 259 Neb. at 619, 611 N.W.2d at 408.

The essence of the claim presented here is that the sons of Donald and Barbara challenge, and seek to overturn, the judgment which dissolved their parents' marriage and approved the

property settlement agreement entered into by Donald and Barbara. The claim, to some extent, seeks to masquerade as a claim for fraudulent deprivation of the sons' "rightful inheritance," predicated upon the allegation that the property settlement approved by the trial court was obtained by fraud. See *Colson v. Colson*, 215 Neb. 452, 339 N.W.2d 280 (1983). See, also, *Klabunde v. Klabunde*, 194 Neb. 681, 234 N.W.2d 837 (1975) (when party to divorce action, represented by counsel, voluntarily executes property settlement agreement which is approved by court and incorporated into divorce decree from which no appeal is taken, ordinarily decree will not thereafter be vacated or modified as to such property provisions, in absence of fraud or gross inequity).

Barbara's will gave each of the three sons an equal share of whatever she owned at her death. What she owned at the time of her death included whatever was left of her share of the marital estate received in the district court's judgment of November 20, 1989. Thus, if the sons' inheritance is to change, it follows that the divorce decree must be found to have been procured by fraud, or grossly inequitable. Therefore, the crucial question is whether a child of a marriage, individually as opposed to acting in a representative capacity, can collaterally attack his or her parents' divorce decree because the child's inheritance was reduced because of alleged fraud in the procurement of the settlement and decree. We suggest that the answer becomes rather self-evident if one asks who would have standing to attack the decree for fraud in the procurement thereof, if Barbara were alive? Clearly, in such circumstances, only Barbara would have standing, and it follows that in the present fact situation, only Barbara's estate, acting through the personal representative, has standing.

We hold that generally, adult children do not have a "legally protectable interest" or a "personal stake in the outcome" of their parents' divorce and/or property settlement agreement so as to give them standing to challenge a parent's divorce decree. The claim is that Barbara was "shortchanged" by fraud in the divorce, resulting in her estate's being less than it should have been upon her death. Neb. Rev. Stat. § 30-2464 (Cum. Supp. 2002) provides that except as to proceedings which do not survive the death of the decedent, a personal representative of a

decedent domiciled in this state at his or her death has the same standing to sue and be sued in the courts of this state and the courts of any other jurisdiction as his or her decedent had immediately prior to death. Thus, the claim of fraud in the procurement of the settlement and decree was Barbara's until her death, and then it became a cause of action to be brought by her personal representative. See *Tecumseh Nat. Bank v. McGee*, 61 Neb. 709, 85 N.W. 949 (1901) (claim for payment of deposit of decedent is normally to be brought by representative, but in limited circumstances, claim may be pursued by heir).

The exceptions outlined in *Tecumseh Nat. Bank v. McGee* arose in a suit by George Harmon for return of a $5,000 bank deposit. A decision adverse to Harmon was reversed by the Nebraska Supreme Court, but before the action could be tried again, Harmon died. The action was revived and pursued by the administrator of Harmon's estate, who ultimately settled it for $800—$200 apiece for each of four heirs. But, one heir did not agree to the settlement, refused the money, and sued in her individual capacity.

The Nebraska Supreme Court in *McGee* delineated limited circumstances under which an action to collect a debt due the estate could be brought directly by an heir as an exception to the general rule that such claim must be brought by the administrator. The *McGee* court defined those circumstances as those where there are no demands from creditors, there has been no administration, or the administration has closed. However, the *McGee* rule was modified in *Mead Co. v. Doerfler*, 146 Neb. 21, 27, 18 N.W.2d 524, 527 (1945), where the court discussed the exception, and a number of other cases, and concluded as follows:

> We think the reasoning supporting the exception already recognized inevitably points to a pronouncement that this court will recognize an exception where the representative of the deceased has failed, neglected and refused to prosecute action on behalf of the estate for the benefit of interested parties provided that the administrator is made a party to the action.

In *Beachy v. Becerra*, 259 Neb. 299, 304, 609 N.W.2d 648, 652 (2000), the Supreme Court quoted with approval from 31 Am. Jur. 2d *Executors and Administrators* § 1285 (1989):

"[W]here the executor or administrator has been guilty of fraud o[r] collusion with the party to be sued, or, more generally, where the interests of the personal representative are antagonistic to those of the heirs or distributees, the heirs or distributees may maintain actions relating to the personalty of the estate in their own names. Similarly, when the legal representative has failed or refused to act, the heir may maintain an action to recover assets for the benefit of the estate."

In *Beachy v. Becerra, supra,* the decedent's niece brought an action against the decedent's personal representative, Mary Becerra, and Becerra's husband to recover property wrongfully transferred by the decedent during her lifetime. While the trial court sustained Becerra's demurrer, the Nebraska Supreme Court found that the issue of whether the niece had standing to bring an action on behalf of the estate was rendered moot by the initiation of the same action against Becerra by the successor personal representative. Therefore, the appeal was dismissed. See, also, *Hampshire v. Powell,* 10 Neb. App. 148, 626 N.W.2d 620 (2001) (as general rule, personal representative is proper person to proceed for recovery of assets of estate).

An appellate court may take judicial notice of its records, proceedings, and judgments in a prior related case when the issues are "interwoven and interdependent" and the controversy has been considered and determined in the prior action. See *Baltensperger v. United States Dept. of Ag.,* 250 Neb. 216, 220, 548 N.W.2d 733, 736 (1996). We have released our opinion this same day in *Nielsen v. Nielsen,* No. A-04-894, 2005 WL 1719731 (Neb. App. July 26, 2005) (not designated for permanent publication), a lawsuit brought by Barbara's personal representative claiming that Donald defrauded Barbara in the procurement of the property settlement agreement by hiding and failing to disclose the extent of the marital estate—which in turn resulted in Steve, Michael, and Don Duane's not receiving the inheritance from Barbara that they should have absent such fraud. Not only are the cases interrelated, they are the same, because *Nielsen v. Nielsen, supra,* is brought by Barbara's personal representative for the benefit of Barbara's heirs—who the record shows were limited to Steve, Michael, and Don Duane.

For the sake of completeness, we note that Neb. Rev. Stat. § 30-2401 (Reissue 1995) states, in pertinent part, "Upon the death of a person, his [or her] real and personal property devolves to the persons to whom it is devised by his [or her] last will . . . subject to . . . administration." As we have judicially noticed, Barbara's personal representative is pursuing the lawsuit in *Nielsen v. Nielsen, supra,* thereby subjecting it to administration. Therefore, § 30-2401 provides no standing in the instant case to Steve and Michael, or to Don Duane in his capacity as a devisee of Barbara's will.

Accordingly, it is abundantly clear that Donald and Barbara's three sons lack standing to bring this action, because it has also been brought by Don Duane in his capacity as personal representative. The fact that Donald's attorney, Mock, was sued here but not in the lawsuit brought by the personal representative is of no consequence, because the issue which is dispositive is whether these plaintiffs have standing to sue to recover on behalf of Barbara's estate, not who they sued. And, the sons and heirs do not have standing, as detailed above.

We note that the "Estate of Barbara Jean Nielsen" is also named as a plaintiff-appellant. However, the "Estate" can only act in Barbara's stead in bringing claims she had at the time of her death by and through the estate's personal representative—and in this case, Don Duane is not proceeding as the representative, but individually. Thus, while the "Estate" is a named party, it is not the proper party—the personal representative is, and he is bringing this claim in *Nielsen v. Nielsen, supra.*

The second count of Plaintiffs' petition in this case is that Steve, Michael, and Don Duane were deprived of their "rightful shares" of Barbara's estate; however, such claim is necessarily predicated on success in changing the decree in *Nielsen v. Nielsen, supra.* In other words, if the estate does not succeed in enlarging Barbara's estate in *Nielsen v. Nielsen, supra,* count II of this lawsuit is meaningless, and because Steve, Michael, and Don Duane, individually, do not have the requisite standing to contest Barbara's divorce from Donald, or whether her estate should have been larger, they lack standing to assert count II, assuming without deciding that it is really any different from count I.

## CONCLUSION

For the reasons stated above, we reverse, and remand the cause to the trial court with directions to vacate its findings and summary judgment in favor of Donald and Mock and to dismiss the action, because Plaintiffs lack standing to bring this suit.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.