IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE ESTATE OF CLASON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE ESTATE OF F.W. EUGENE CLASON, DECEASED.

RUTH CLASON, PERSONAL REPRESENTATIVE OF THE ESTATE
OF F.W. EUGENE CLASON ET AL., APPELLEES,

V.

STEVEN E. CLASON, SUCCESSOR PERSONAL REPRESENTATIVE OF
THE ESTATE OF F.W. EUGENE CLASON, APPELLANT.

Filed July 1, 2025.    No. A-24-677.

Appeal from the County Court for Furnas County: JEFFREY M. WIGHTMAN, Judge.
Affirmed.

Terry K. Barber, of Barber & Barber, P.C., L.L.O., for appellant.

Jordan W. Adam, of Fraser Stryker, P.C., L.L.O., for appellee.

RIEDMANN, Chief Judge, and MOORE and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Steven E. Clason, in his capacity as personal representative of the estate of F.W. Eugene Clason, appeals from the formal order for complete settlement of the estate entered by the Furnas County Court. On appeal, Steven asserts that the county court erred in finding that the estate did not have to pay certain administrative fees proposed by Steven. Steven also asserts the county court erred in determining the amount of his personal representative fee and off-setting a prior judgment entered against him with that fee. Additionally, Steven challenges a separate order

entered by the county court which awarded attorney fees to Steven's former attorney. For the reasons set forth herein, we affirm the orders of the county court.

## II. BACKGROUND

F.W. Eugene Clason (Eugene) died testate on May 16, 2010. His will, dated March 31, 2008, left his entire estate to the Clason Living Trust (the Trust). The will appointed Eugene's wife, Ruth Clason, as the personal representative of his estate. Steven was named as the successor personal representative. Ruth died on January 12, 2013. As such, Steven is the current personal representative of Eugene's estate.

Upon the closing of Eugene's estate, Steven is to distribute the entirety of the assets, minus expenses incurred, to the Trust. The Trust names five beneficiaries: Bonnie Wright, Steven, Susan Bayliss, Jim Clason, and Lee Clason. The beneficiaries are five of Eugene and Ruth's children.

While the estate proceedings have been pending for some time in the county court, this appeal involves what should, presumably be, the county court's final two orders in winding up the estate. On May 7, 2024, the county court entered an order awarding Steven's former attorney, Siegfried Brauer, with fees for his work for the estate and for Steven, as personal representative of the estate. On August 8, 2024, the county court entered a formal order for complete settlement after informal testate proceedings. This order addressed the administrative expenses the estate owed and the amount of personal representative fees that should be paid to Steven before the estate's assets are distributed to the Trust.

Steven challenges the decisions made by the county court in these two orders. We will provide necessary background for each of his assertions on appeal in the analysis section below.

## III. ASSIGNMENTS OF ERROR

On appeal, Steven assigns seven errors by the county court. First, he asserts that the county court erred in the amount of attorney fees awarded to his first attorney, Brauer. He next asserts that the county court erred in denying the following expenses incurred during the administration of the estate: (1) $200 for his rental of a pickup truck, (2) money spent on fertilizer by Eric Holen during Holen's attempt to lease farm land owned by the estate, and (3) the cost of a bill of exceptions paid for by Steven's current attorney. Finally, Steven asserts that the county court erred in determining the amount of personal representative fees he was owed, in using those fees to off-set a judgment he owed in a separate case, and in failing to recognize Steven's assignment of the fee to Brauer.

## IV. STANDARD OF REVIEW

An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Guardianship & Conservatorship of J.F.*, 307 Neb. 452, 949 N.W.2d 496 (2020). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*.

In a probate case, the county court has discretion to approve or deny estate expenses, and an appellate court will not reverse those decisions if they are based on competent evidence. *In re Estate of Walker*, 315 Neb. 510, 997 N.W.2d 595 (2023).

- 2 -

## V. ANALYSIS

### 1. BRAUER'S ATTORNEY FEES

In January 2013, Brauer began representing Steven in both his capacity as personal representative of Eugene's estate and his individual capacity. In October 2022, Steven filed an interim accounting for the estate. As a part of that interim accounting, Steven indicated that the estate owed Brauer a total of $66,048.62 for "[a]ccrued attorney fees and expenses since the last payment made by the Eugene Clason Estate."

Shortly after Steven submitted this interim accounting, in November 2022, Steven and Bayliss, who was the personal representative of Ruth's estate, reached a settlement agreement as part of the closing of that estate. In this settlement agreement, Bayliss agreed

> that the attorney fees, as presented on the Interim Accounting filed by Steven E. Clason, as Personal Representative of the Estate of F.W. Eugene Clason, are fair and reasonable, and should be paid f[ro]m the Estate of F.W. Eugene Clason, as funds are available. Susan J. Bayliss hereby waives any and all objections to said reasonable attorney fees.

The court adopted the settlement agreement and ordered that "Brauer's attorney fees that were filed and submitted on October 7, 2022, as part of Steve Clason's interim accounting in the F.W. Eugene Clason Estate case are approved."

On December 16, 2022, Brauer filed a motion to withdraw as counsel for Steven in his capacity as personal representative of Eugene's estate. The county court sustained Brauer's motion to withdraw on January 20, 2023. On February 13, Brauer submitted an updated claim for attorney fees incurred by Eugene's estate prior to Brauer's withdrawal from representation. The claim indicated that the "estate has incurred unpaid fees in the total amount of $113,485.47." The majority of the increase in fees from October 2022, when the fees were estimated to total approximately $66,000, to February 2023, when the fees totaled more than $113,000, appears to be interest that Brauer charged the estate for its unpaid balance.

In January 2024, Brauer filed an amended and updated claim for attorney fees. This claim indicated that the estate owed attorney fees in the amount of $116,824.43. Again, the increase in fees appears to be based solely on interest Brauer charged the estate. Bayliss filed an objection to the amended and updated claim for attorney fees. In her objection, she argued that Brauer should be limited to receiving the $66,048.62 in attorney fees agreed to as part of the November 2022 settlement agreement. She also argued that the interest charged by Brauer on the outstanding attorney fees was excessive and not authorized by the county court.

A hearing was held on Brauer's request for attorney fees on March 8, 2024. At the start of the hearing, the county court asked Steven whether he was proposing that the estate pay Brauer the full $116,824.43 he was requesting. Steven's new counsel initially indicated that "I don't have a horse in the fight as far as Mr. Brauer's fee request is concerned." He later indicated to the court that Steven had not made a request for the estate to pay the full amount of attorney fees. Counsel then indicated, "At the same time, we have not made an objection." The court explained that given Steven's position, "Mr. Brauer [is] his own proponent . . . moving forward."

At the hearing, Brauer testified that Steven, as personal representative of Eugene's estate, had agreed to pay 1-percent interest per month on any unpaid balance due to Brauer until the

attorney fees were paid in full. According to Brauer, Steven agreed to the interest because the estate had no money for a number of years to pay for Brauer's ongoing legal services. Brauer further testified that the November 2022 settlement agreement did not provide that the only fees that he was entitled to was the approximately $66,000 accrued by October 2022. His understanding of the agreement was that it contemplated future fees incurred by the estate for his work and that it contemplated that the interest accrued prior to October 2022 still needed to be calculated. Brauer did indicate that after the settlement agreement was entered into, he did do some additional work for the estate prior to his withdrawal from representation.

The hearing on the attorney fees was continued to April 12, 2024. On this date, Steven testified that the estate had not paid any fees to Brauer for his work since approximately 2014 because the estate had no income. Steven affirmed Brauer's testimony that he had agreed to pay Brauer 1-percent interest per month on the accrued attorney fees.

The county court entered an order on May 7, 2024, approving "attorney fees to be paid by [Eugene's estate] to Siegfried Bauer and Brauer Law Office in the amount of $66,048.62. The court denies approval for payment from estate assets of any additional amounts to Siegfried Brauer or Brauer Law Office." The court explained its award of attorney fees as follows:

> The court finds that Steven Clason and Mr. Brauer are bound by the agreement entered on November 8, 2022. Multiple parties took actions on November 8, 2022, and after that date, based on said agreement. . . . No reasonable person would read the agreement which was read on the record and believe that the final bill for attorney fees through November 8, 2022, would be nearly double the $66,048.62 contained in the interim accounting and stipulated to on November 8, 2024. If Mr. Brauer believed he was entitled to interest on the accrued attorney fees, he should have included the interest in the agreement of November 8, 2022. Had he included that interest, it is possible that the parties would have never reached the agreement. That is the point of an agreement; to bind the parties to specific terms as of the date of the agreement. It flies in the face of contract law to believe that all the other terms of the agreement were binding, but not the term regarding the attorney fees. Mr. Brauer argues that the agreement should be read to prohibit Ms. Bayliss from arguing that any amount up to $66,048.62 was unreasonable, but that he is free to argue for any amount above that number. This is an unconvincing argument and is in conflict with the plain language of the agreement read on the record.

In his brief on appeal, Steven argues that the county court erred in failing to award Brauer the full amount of attorney fees he requested in his amended and updated claim for attorney fees filed in January 2024. In her brief, Bayliss argues that the issue of Brauer's attorney fees is not properly before us in this appeal because the May 7, 2024, order was a final order that was not appealed from within 30 days and because Steven lacks standing to challenge the amount of attorney fees awarded to Brauer. Upon our review, we conclude that even if we were to find that the May 2024 order was timely appealed, Steven's claim still fails because he lacks standing to challenge the order.

Standing is the legal or equitable right, title, or interest in the subject matter of the controversy which entitles a party to invoke the jurisdiction of the court. *Crosby v. Luehrs*, 266 Neb. 827, 669 N.W.2d 635 (2003); *Hradecky v. State*, 264 Neb. 771, 652 N.W.2d 277 (2002).

Standing relates to a court's power, that is, jurisdiction, to address the issues presented and serves to identify those disputes which are appropriately resolved through the judicial process. *Governor's Policy Research Office v. KN Energy*, 264 Neb. 924, 652 N.W.2d 865 (2002). Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. *Id.*; *Miller v. City of Omaha*, 260 Neb. 507, 618 N.W.2d 628 (2000). As an aspect of jurisdiction and justiciability, standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf. See *Nielsen v. Nielsen*, 13 Neb. App. 738, 700 N.W.2d 675 (2005).

Here, Steven asserts that the county court erred in the amount of attorney fees it awarded to Brauer for his work on Eugene's estate. However, Steven does not have any right, title, or interest in the amount of attorney fees Brauer was awarded. At the time of the hearing on the attorney fee issue, Steven explicitly indicated that he was not taking a position on the amount of attorney fees owed to Brauer, stating that he did not "have a horse" in that fight. The county court determined that Brauer was the sole proponent of his request for fees. We agree. Brauer and his law firm are the only parties who could properly challenge the fee award, but neither has filed an appeal raising this issue. Because Steven lacks standing to raise the issue of Brauer's attorney fee award in this appeal, we do not consider the issue further.

## 2. EXPENSES INCURRED BY ESTATE

### (a) $200 for Pickup Truck Rental

During the May 17, 2024, hearing addressing the final accounting for the estate filed by Steven, he testified that in November or December 2023, he "borrowed" a pickup truck from his nephew, Jeff Gove, on behalf of the estate in order to complete a survey of the real estate owned by the estate prior to its sale. Steven indicated that he was not sure when or if he had actually paid Gove the $200 for the rental of the pickup truck. In its formal order for complete settlement of the estate, the county court denied Steven's request to have the estate pay Gove $200 for the pickup truck rental. The court explained:

> During the hearing, [Steven] testified he had rented a pickup truck from his nephew, Jeremy Gove, to perform certain work in approximately the fall of 2023 in connection with selling the land in this Estate. [Steven] testified he owed Mr. Gove $200 for the pickup truck rental, but he had not yet paid Mr. Gove this amount. [Steven] did not seek advance approval from the Court to allegedly incur this cost, nor does the Court find that such cost was necessary or benefitted this Estate. The Court denies [Steven's] request to pay Mr. Gove $200 from this Estate.

On appeal, Steven challenges the county court's denial of his request for the estate to pay Gove $200 for the pickup truck rental. He asserts, "The evidence . . . demonstrated the need for the use of Mr. Gove's pickup, and that it was a reasonable and necessary administration expense of this estate." Brief for appellant at 12. Upon our review, we find no error by the county court in denying the expense for the pickup truck rental.

Neb. Rev. Stat. § 30-2487(c) (Reissue 2016) indicates that proper costs and expenses of administration of an estate include "expenses incurred in taking possession or control of estate

assets and the management, protection, and preservation of the estate assets, expenses related to the sale of estate assets, and expenses in the day-to-day operation and continuation of business interests for the benefit of the estate." At the May 2024 hearing, Steven presented very little evidence regarding the necessity of the expense for the pickup truck rental. He vaguely indicated he used the pickup truck to tow a trailer with necessary equipment he needed to complete a survey of estate-owned property. He failed to provide any specifics regarding the rental, including why he could not use a different vehicle to transport the equipment in order to accomplish the survey. Nor did he provide any document evidencing the exact terms of the rental agreement for the pickup truck. In fact, Steven failed to offer any evidence to prove he paid a $200 rental fee to Gove for the use of the pickup truck. He did not offer into evidence a canceled check or even an invoice for the rental. And, during his testimony, he equivocated when asked whether he had paid the $200, indicating that he could not remember and he would have to check his records. Such incomplete evidence was insufficient to demonstrate that the expense to rent the pickup truck was a proper administrative expense of the estate.

(b) Fertilizer Purchased by Holen

In his May 2024 final accounting, Steven indicated that the estate incurred an administrative expense owed to Holen, for fertilizer Holen purchased for estate-owned property. The total amount of the expense claimed by Steven was $13,586.11.

In his testimony during the May 17, 2024, hearing, Steven further explained this administrative expense. Steven offered into evidence an invoice for fertilizer he had received from Holen. The invoice, which is difficult to read, indicates that Holen had paid over $13,000 for fertilizer application to First Rate Ag. However, the invoice does not clearly indicate what Holen did with this fertilizer. Steven testified that Holen had applied that fertilizer to estate-owned farmland. Steven explained that in the early part of 2021, he entered into a lease agreement with Holen such that Holen would farm the estate-owned land. Steven did not have the authority to enter into a lease agreement regarding this farmland, though. In fact, at the time that Steven entered into the purported lease agreement with Holen, the land was already being leased by someone else by Bayliss, who had control over the land as a court-appointed special fiduciary. Despite Holen not being able to ever farm the land, Steven contended that he should be reimbursed by the estate for the application of the fertilizer. Steven conceded, however, that he had not paid any money to Holen for the fertilizer, either personally or as personal representative of Eugene's estate.

In its formal order for complete settlement, the county court denied Steven's request that the estate pay Holen $13,586.11 for the fertilizer. The court found that Steven "had no authority to lease [the estate-owned farmland] to Mr. Holen during the 2021 crop year, and the Estate should not bear the cost of any alleged costs that Mr. Holen incurred." On appeal, Steven challenges the court's denial of the administrative expense. He asserts that because Holen was unaware that Steven did not have authority to enter into the lease agreement for the farmland, that the estate should reimburse Holen for the fertilizer he purchased in furtherance of the lease agreement.

Upon our review, we agree with the decision and rationale of the county court. It is clear that Steven did not have the authority to enter into a lease agreement with Holen for the estate-owned land. Given this fact, any amount expended as a result of such purported lease agreement is not an expense that is properly allocated to the estate. Because Steven entered into

the lease agreement knowing that he was not authorized to do so, the estate should not be responsible for the cost of the fertilizer. Notably, Steven testified that he has not paid any money to Holen for the fertilizer either personally or in his capacity as personal representative of the estate. We affirm the decision of the county court to deny payment for the fertilizer.

### (c) Bill of Exceptions Requested by Current Attorney

Another expense of the estate listed in the May 2024 final accounting was the attorney fees incurred by Steven's new attorney after Brauer withdrew from his representation. The fees requested totaled $15,378.25, and included a charge of $4,240.25 for the cost of a bill of exceptions which was utilized to evaluate a potential appeal in separate proceedings where the estate had sought rental fees for real property it owned. During his testimony at the May 17 hearing, Steven indicated that he had authorized his attorney to order the bill of exceptions. However, he acknowledged that while a notice of appeal was filed in the case, the appeal was dismissed by the appellate court because of missed filing deadlines. Exhibits offered at the hearing confirmed that a notice of appeal was filed on July 7, 2023, but the case was dismissed on October 12 "for failure to file briefs."

Bayliss objected to the estate paying for the bill of exceptions: "The appeal was not prosecuted in good faith and therefore the Estate should not have to bear the $4,240.25 costs to prepare the Bill of Exceptions." She cited to Neb. Rev. Stat. § 30-2481 (Reissue 2016), as support for her position. That statutory section provides: "If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not he [or she] is entitled to receive from the estate his [or her] necessary expenses and disbursements including reasonable attorneys' fees incurred."

Ultimately, the county court approved the estate's payment of the new attorney fees except for the $4,240.25 expense incurred for the bill of exceptions. The court explained: "Court finds based on the evidence that [the] appeal was ultimately not prosecuted in any meaningful way, that it was not done for the benefit of the estate, or at least it had no benefit to the estate. . . ." On appeal, Steven challenges the court's decision to deny payment by the estate for the $4,240.25 for the bill of exceptions. He asserts that even though the appeal was not actually prosecuted, the bill of exceptions was a necessary expense in evaluating the success or necessity of such an appeal.

We find no error in the county court's decision to deny the estate's payment for the bill of exceptions. While § 30-2481 would appear to require the estate to pay for necessary expenses a personal representative incurs in defending or prosecuting an action in good faith, here, no prosecution of an action actually occurred. The record is clear that after the bill of exceptions was ordered, Steven and his attorney failed to file briefs in the appeal and, as such, the appeal was dismissed. Such inaction does not indicate that the appeal was prosecuted in good faith. Moreover, Steven does not provide any evidence to support his contention that the bill of exceptions was a necessary expense to decide whether to prosecute an appeal. We agree with the decision of the county court that the estate should not be responsible for the expense of the bill of exceptions when no appeal was actually prosecuted for the benefit of the estate.

## 3. PERSONAL REPRESENTATIVE FEES

### (a) Amount of Fees

As a part of the November 2022 settlement agreement adopted by the county court in the proceedings involving Ruth's estate, Steven and Bayliss reached an agreement about the amount of personal representative fees Steven would receive as a result of his work in Eugene's estate proceedings. The settlement agreement provided that the fees would be

> equal to 6% of the fair market value of [Eugene's estate] at the date of distribution of that estate, as determined by a market analysis performed by a disinterested third-party on the real property owned by such estate, is fair and reasonable. Susan J. Bayliss waives any and all objections to such a personal representative fee.

In its order adopting the agreement, the court recounted the portion about Steven's personal representative fees as follows: "When Steven . . . closes [Eugene's estate], he is entitled to a personal representative fee of 6% of the fair market value (per a market analysis) of the real property in that estate."

When Steven filed his final accounting in Eugene's estate proceedings, he requested that he receive personal representative fees totaling $36,205, which amounted to 6 percent of the total assets of the estate, which he indicated was the agreement of the parties in the November 2022 settlement agreement. Bayliss contested Steven's calculation of the personal representative fees owed to him. She asserted that he should only receive fees in the amount of $34,728. This amount represented 6 percent of "the fair market value of the real property in the estate," pursuant to the county court's order adopting the settlement agreement.

Ultimately, in the county court's August 2024 formal order for complete settlement of the estate, it found that Steven was entitled to personal representative fees in the amount of 6 percent of the fair market value of all the assets in the estate, rather than just the fair market value of the real estate assets, in accordance with the terms of the November 2022 settlement agreement. The court found that 6 percent of the value of all the assets was $36,205. However, the court subtracted from that amount $166.36, which amount Steven had admitted to retaining when he closed the estate's bank account. As such, the court found Steven was entitled to $36,038.64 in personal representative fees.

On appeal, Steven appears to argue that the county court erred in calculating the amount of personal representative fees owed to him. He references the discrepancy between the language of the parties' November 2022 settlement agreement and the county court's order adopting such agreement. Steven asserts that pursuant to the terms of the actual settlement agreement, his fees were to be equivalent to 6 percent of the total value of the assets included in the estate. As we explained above, the county court agreed with Steven and awarded him fees totaling 6 percent of the total value of the assets included in the estate. While the court did subtract a nominal amount due to Steven retaining funds from the estate's bank account, Steven does not assert any error with this deduction. Because the county court adopted Steven's calculation of the personal representative fees, we are perplexed by Steven's assignment of error. Nonetheless, we affirm the county court's decision regarding the amount of fees Steven was entitled to.

(b) Offset of Prior Judgment

In 2013, Steven was acting as trustee of the Trust, in addition to acting as personal representative of Eugene's estate. The Trust owned a large portion of the family's farmland; the estate also owned a portion of this farmland. Notably, Eugene's will directed that the assets in the estate should be transferred to the Trust for distribution once the estate was settled.

In his capacity as trustee, Steven rented farmland to himself, in his personal capacity. A claim was later filed against Steven, alleging that Steven did not pay market value for his rental of the farmland, which amounted to "self-dealing" and which caused harm to the Trust and its beneficiaries. After a trial, the Furnas County District Court found that Steven owed $41,318.48 to the Trust for the "self-dealing" rental agreement. The district court calculated this amount by subtracting the amount Steven paid to rent the land in 2013 from the fair market rental value for the property. The district court's order was not properly appealed and, as a result, the order is now final.

At the time the county court entered its formal order for complete settlement in Eugene's estate proceedings, Steven had not paid the $41,318.48 he owed to the Trust. Accordingly, the county court ordered that Steven's personal representative fee of $36,038.64 be paid to the trust in partial satisfaction of the judgment entered by the district court. As such, the county court noted that "nothing shall be paid to [Steven] for his requested personal representative fee." The court explained its decision as follows:

> [Steven] wrongfully entered into the self-dealing lease while he was Personal Representative of this Estate, and as [the district court] found, he wrongfully benefited from a below-market lease amount to rent the Clason farm in 2013 to the detriment of the other beneficiaries of this Estate. The additional $41,318.48 in rent money that [Steven] should have paid to lease the Clason farm in 2013 would have been an asset of this Estate but for [Steven's] wrongful refusal to pay fair market value to lease that land.

On appeal, Steven argues that the county court erred by ordering that his personal representative fee should be used to partially satisfy the judgment entered against him and in favor of the Trust for his improper renting of the family's farmland. Essentially, Steven asserts that "the foregoing judgment has and had no readily apparent lien status in this estate proceeding, nor did it appear to be a proper charge against this estate." Brief for appellant at 14. Steven made this same argument in his final accounting filed with the county court in May 2024. However, in both instances where he asserts this argument, Steven has failed to explain exactly why the county court could not offset the prior judgment Steven owed to the Trust with Steven's personal representative fees. Upon our own review and analysis, we conclude that Steven's assertion regarding the offset being an improper lien against him to be without any merit.

Furthermore, our review of the record reveals that, arguably, Steven was not entitled to a personal representative fee at all based on the evidence of his mismanagement of estate property and his self-dealings. Such evidence demonstrates that Steven took actions that were not in furtherance of the interests of the estate, the Trust, or the ultimate beneficiaries of each. However, as we discussed above, the parties agreed as part of the November 2022 settlement agreement that Steven would receive 6 percent of the assets of the estate as his personal representative fee. The

county court verbally stated at the conclusion of the proceedings that Steven was likely not entitled to a fee given his history of malfeasance. Ultimately, however, the court abided by the agreement of the parties and allowed the award of fees to Steven.

Notwithstanding that agreement, the county court ordered that Steven's fees be used to offset the judgment entered against him. The evidence presented during the estate proceedings supports the court's decision to handle the issue of Steven's personal representative fees in this manner. We can find no error in the county court's order instructing the personal representative fees to be used to benefit the beneficiaries of the Trust, by paying down the judgment Steven owed for his self-dealing. While Steven did not receive the personal representative fees agreed to in the settlement agreement in cash, he received a credit against the judgment entered against him, a benefit that he arguably did not deserve. Given the unique circumstances presented by this case, we affirm the decision of the county court in this regard.

### (c) Assignment of Fees Earned to Brauer

Finally, Steven argues that the county court erred in failing to award his personal representative fee to Brauer, as Steven had executed an assignment of his fee to Brauer to pay Brauer's accrued attorney fees. While we question whether Steven has standing to assert this claim, we find that the claim ultimately must fail because the assignment entered into between Steven and Brauer does not encompass Steven's earned personal representative fees.

On March 12, 2019, Steven signed a document entitled "Assignment" which purported to assign to Brauer funds Steven expected to receive as a beneficiary of his parents' estates. Specifically, the assignment provided:

> For valuable consideration, I, Steven E. Clason . . . assign to Siegfried H. Brauer, dba Brauer Law Office . . . all or so much of my expectancy in [Eugene's estate], the estate of Ruth E. Clason, [the Trust] dated March 31, 2008, and the Ruth E. Clason Living Trust dated July 13, 2011 which I may acquire, as heir-at-law, or the beneficiary of the last will and testament of either Ruth E. Clason or F.W. Euguene Clason, or as beneficiary of either the . . . Trust dated March 31, 2008 or the Ruth E. Clason Living Trust dated July 13, 2011.

By the terms of this assignment, Steven did not assign to Brauer the personal representative fee he earned by virtue of serving as the personal representative for Eugene's estate. Rather, the assignment only included Steven's potential distributions from his parents' estates and trusts. As such, the county court committed no error in failing to assign the personal representative fee to Brauer pursuant to their agreement.

### VI. CONCLUSION

Steven lacks standing to challenge the county court's decision regarding the amount of Brauer's attorney fees. His other assertions of error have no merit. The county court's decision that the estate should not have to pay certain expenses was proper given the evidence presented. Steven's personal representative fee and its use as an offset for a prior judgment entered against him is supported by the record.

AFFIRMED.